1  NICHOLAS S. CHRISOS, COUNTY COUNSEL
   MARIANNE VAN RIPER, Supervising Deputy (CA SBN 136688)
2  Marianne.vanriper@coco.ocgov.com
   and NICOLE M. WALSH, DEPUTY (CA SBN 248222)
3  nicole.walsh @coco.ocgov.com
   333 West Santa Ana Boulevard, Suite 407
4  Post Office Box 1379
   Santa Ana, California  92702-1379
5  Telephone:  (714) 834-6257
   Facsimile:  (714) 834-2359
6
   Attorneys for Defendants, Sheriff Sandra Hutchens,
7  and Orange County Sheriff-Coroner Department

8              **UNITED STATES DISTRICT COURT**

9              **CENTRAL DISTRICT OF CALIFORNIA**

10             **SOUTHERN DIVISION – SANTA ANA**

11  DOROTHY McKAY, DIANA KILGORE,   )   Case No. 8:12-cv-01458 JVS (JPRx))
    PHILLIP WILLMS, FRED KOGEN,     )
12  DAVID WEISS, and THE CRPA       )
    FOUNDATION,                     )
13                                  )   **DEFENDANTS' OPPOSITION TO**
                  Plaintiffs,       )   **PLAINTIFFS' MOTION FOR**
14                                  )   **PRELIMINARY INJUNCTION; AND**
                                    )   **MEMORANDUM OF POINTS AND**
15          v.                      )   **AUTHORITIES IN SUPPORT**
                                    )
16  SHERIFF SANDRA HUTCHENS,        )
    individually and in her official capacity as )
17  Sheriff of Orange County; ORANGE )
    COUNTY SHERIFF-CORONER          )
18  DEPARTMENT; COUNTY OF ORANGE;   )
    and DOES 1-10,                  )
19                                  )   **DATE:    October 29, 2012**
                  Defendants.       )   **TIME:    1:30 p.m.**
20  _____)   **PLACE:   Courtroom 10C**

21        Defendants, Sheriff Sandra Hutchens ("Sheriff Hutchens") and the Orange County

22  Sheriff-Coroner Department ("OCSD") (sometimes collectively referred to herein as

23  "Defendants"), by and through their attorneys of record Nicholas S. Chrisos, County

24  Counsel, Marianne Van Riper Supervising Deputy, and Nicole M. Walsh, Deputy,

25  respectfully oppose the Motion for Preliminary Injunction filed by Plaintiffs Dorothy

26  McKay, Phillip Willms, Fred Kogen, David Weiss and the California Pistol and Rifle

27  Association Foundation ("CPRA") (collectively, "Plaintiffs").  This Opposition is based

28  upon the attached Memorandum of Points and Authorities, the Declarations of Commander

OFFICE OF THE COUNTY COUNSEL
COUNTY OF ORANGE

1  Donald Barnes, Lieutenant Sheryl Dubsky, Melissa Soto, Kathleen Raley, Vicki Sands, and

2  Franklin E. Zimring (all submitted and filed herewith), and whatever oral or documentary

3  evidence that may be submitted prior to or at the hearing on this motion.

4  DATED:  October 9, 2012                Respectfully submitted,

5                                          NICHOLAS S. CHRISOS, COUNTY COUNSEL
                                           and NICOLE M. WALSH, DEPUTY
6

7                                          By _____

8                                             Nicole M. Walsh, Deputy

9                                          Attorneys for Defendants, Sheriff Sandra
                                           Hutchens, and Orange County Sheriff-Coroner
10                                         Department

11  .

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

OFFICE OF THE COUNTY COUNSEL
COUNTY OF ORANGE

# TABLE OF CONTENTS

Page No.

TABLE OF AUTHORITIES ................................................................. iii

MEMORANDUM OF POINTS AND AUTHORITIES ........................... 1

I.    INTRODUCTION ................................................................... 1

II.   STATEMENT OF FACTS ....................................................... 1

  A.   The California Penal Code ................................................ 2

  B.   Orange County's Licensing Program ............................... 3

  C.   Plaintiffs' Claims ............................................................ 5

      1.   Dorothy McKay ......................................................... 5
      2.   Phillip Willms ........................................................... 6
      3.   Fred Kogen ................................................................ 6
      4.   David Weiss ............................................................... 6
      5.   Diana Kilgore ............................................................ 7
      6.   The CRPA Foundation ............................................... 7

III.  ARGUMENT ......................................................................... 7

  A.   Plaintiffs' Request for a Preliminary Injunction
       Should be Denied ............................................................ 7

      1.   Plaintiffs Are Not Likely to Succeed on the Merits of
           Their First and Third Claims for Violation of the Second
           Amendment ................................................................ 7

          a.   The Scope of the Second Amendment Right Does
               Not Extend to Carrying Concealed Weapons Outside
               the Home ........................................................... 8

          b.   Because OCSD's CCW Policy Does Not Burden the
               Second Amendment Right Articulated in Heller,
               Rational Basis Review is Appropriate ............. 13

          c.   Intermediate Scrutiny is Appropriate if This
               Court Finds that OCSD's CCW Policy Substantially
               Burdens a Second Amendment Right ............... 15

          d.   Strict Scrutiny Does Not Apply ....................... 18

i

Page No.

    e.  Neither OCSD's CCW Policy nor Penal Code
       Section 26150(a)(2) are Unconstitutional in
       All of Their Applications, Therefore, Plaintiffs'
       Facial Challenges Are Not Likely to Succeed...............19

 B. Plaintiffs are Not Likely to Succeed on their First and
   Fourth Claims For Alleged Violation of the Equal Protection ..........20

 C. Plaintiffs Are Not Likely to Succeed on Claims Against
   Sheriff Hutchens in Her Individual Capacity Because
   She is Immune from Suit....................................................22

IV. CONCLUSION...........................................................25

OFFICE OF THE COUNTY COUNSEL
COUNTY OF ORANGE

# TABLE OF AUTHORITIES

Page No.

**FEDERAL CASES**

*Amoco Production Co. v. Gambell*
    480 U.S. 531 (1987)...............................................................................7

*Anderson v. Creighton*
    483 U.S. 635 (1987)....................................................................... 23, 24

*Bateman v. Perdue*
    2012 WL 3068580 (E.D. N.C. Mar. 29, 2012)............................................ 12

*City of Cleburne v. Cleburne Living Center, Inc.*
    473 U.S. 432 (1985)........................................................................... 21

*Clark v. Jeter*
    486 U.S. 456 (1988)........................................................................... 16

*Craig v. Boren*
    429 U.S. 190 (1976)........................................................................... 16

*Crawford-El v. Britton*
    523 U.S. 574 (1998)........................................................................... 23

*Devereaux v. Abbey*
    263 F.3d 1070 (9th Cir. 2001) ........................................................... 24

*District of Columbia v. Heller*
    554 U.S. 570 (2008)................................................................... passim

*Erdelyi v. O'Brien*
    680 F.2d 61 (9th Cir. 1982.) ..............................................................3

*Freeman v. City of Santa Ana*
    68 F.3d 1180 (9th Cir. 1996) ............................................................ 21

*Gonzales v. Carhart*
    500 U.S. 124 (2007)........................................................................... 20

*Harlow v. Fitzgerald*
    457 U.S. 800 (1982)........................................................................... 23

OFFICE OF THE COUNTY COUNSEL
COUNTY OF ORANGE

Page No.

**FEDERAL CASES (cont.)**

*Hope v. Pelzer*
    536 U.S. 730 (2002)............................................................. 24

*Joyce v. Mavromatis*
    783 F.2d 56 (6th Cir. 1986) ............................................. 21

*Kachalsky v. Cacace*
    817 F.Supp.2d 235 (S.D.N.Y. 2011) ............................. 10, 13, 16

*Kelley v. Johnson*
    425 U.S. 238 (1976) ......................................................... 17

*Lorrilard Tobacco Co. v. Reilly*
    533 U.S. 525 (2001) ......................................................... 16

*McDonald v. City of Chicago*
    130 S.Ct. 3020 (2010)..................................... 8-10, 13, 15

*Mississippi Univ. for Women v. Hogan*
    458 U.S. 718 (1982) ......................................................... 16

*Mitchell v. Forsyth*
    472 U.S. 511 (1985) ......................................................... 24

*Munaf v. Geren*
    553 U.S. 674 (2008)...........................................................7

*New York v. Ferber*
    458 U.S. 747 (1982).......................................................... 19

*Nordyke v. King*
    644 F.3d 776 (9th Cir. 2011) ......................................... 14

*Pearson v. Callahan*
    555 U.S. 223 (2009)............................................. 22, 23, 24

*Penuliar v. Mukasky*
    528 F.3d 603 (9th Cir. 2008) ...........................................9

*Peruta v. County of San Diego*
    758 F.Supp.2d 1106 (S.D. Cal. 2010)................. 10, 16, 18, 21, 24

OFFICE OF THE COUNTY COUNSEL
COUNTY OF ORANGE

iv

Page No.

**FEDERAL CASES (cont.)**

*Richards v. County of Yolo*
    821 F.Supp.2d 1169 (E.D. Cal.2011) ............................ 10, 14, 15, 19, 20, 24

*Romer v. Evans*
    517 U.S. 620 (1996)......................................................... 22

*Saucier v. Katz*
    533 U.S. 194 (2001)......................................................... 23

*Schall v. Martin*
    467 U.S. 253 (1984)......................................................... 16

*Scocca v. Smith*
    2012 WL 2375203 *6 (N.D. Cal. June 22, 2012)........................ 14

*Stormans, Inc. v. Selecky*
    586 F.3d 1109 (9th Cir. 2009) ......................................... 15

*Wilson v. Layne*
    526 U.S. 603 (1999)......................................................... 23

*Winter v. Natural Resources Defense Council, Inc., et al.*
    555 U.S. 7 (2008).............................................................7

*United States v. Chester*
    628 F.3d 673 (4th Cir. 2010) .................................... 14, 16

*United States v. Engstrum*
    609 F.Supp.2d 1227 (D.Utah 2009)................................ 18

*United States v. Marzzarella*
    614 F.3d 85 (3d Cir. 2010) ....................................... 14, 16

*United States v. Masciandaro*
    638 F.3d 458 (4th Cir. 2011) .................................... 11, 14

*United States v. Skoien*
    614 F.2d 638 (7th Cir. 2010) .................................... 11, 16

OFFICE OF THE COUNTY COUNSEL
COUNTY OF ORANGE

Page No.

**FEDERAL CASES (cont.)**

*United States v. Salerno*
    481 U.S. 739 (1987)................................................................ 16, 19, 20

*United States v. Vongxay*
    594 F.3d 1111 (9th Cir. 2010) ..................................................... 10

*United States v. Weaver*
    2012 WL 727488 (S.D. W. VA. Mar. 6, 2012) ............................. 12

*United States v. Whitlock*
    639 F.3d 935 (9th Cir. 2011) ........................................................ 15

*Wash. State Grange v. Wash. State Republican Party*
    552 U.S. 442 (2008).................................................................... 19

*Wollard v. Sheridan*
    2012 WL 6975674 (D. Md. Mar. 2, 2012) .............................. 11, 12

**STATE CASES**

*Gifford v. City of Los Angeles*
    88 Cal.App.4th 801 (2001) ...........................................................3

*Nichols v. County of Santa Clara*
    223 Cal.App.3d 1236 (1990) .........................................................3

*People v. Dawson*
    403 Ill.App.3d 499 (2010) ............................................................ 13

*People v. Ellison*
    196 Cal.App.4th 1342 (2011) .............................................. 11, 14, 16

*People v. Flores*
    169 Cal.App.4th 568 (2008) .................................................. 10, 14

*People v. Hodges*
    70 Cal.App.4th 1348 (1999) ......................................................... 17

*People v. Mitchell*
    2012 WL 3660270 (2012)..................................................... 10, 16

OFFICE OF THE COUNTY COUNSEL
COUNTY OF ORANGE

Page No.

**STATE CASES (cont.)**

*People v. Yarbrough*
    169 Cal.App.4th 303 (2008) .................................................. 11, 14, 17

*Salute v. Pitchess*
    61 Cal.App.3d 557 (1976) ...................................................................3

**CALIFORNIA STATE STATUTES**

Penal Code
    Section 12050 ................................................................................3
    Section 25400 ..............................................................................22
    Section 25400(a) ............................................................. 2, 2 fn. 2, 3
    Section 25450 ................................................................................2
    Section 25505 ................................................................................2
    Section 25515 ................................................................................2
    Section 25525 ................................................................................3
    Section 25530 ................................................................................3
    Section 25535 ................................................................................3
    Section 25550 ................................................................................3
    Section 25600 ................................................................................3
    Section 25605 ................................................................................3
    Section 26150 ...................................................... 1, 2 fn. 2, 14, 18, 22
    Section 26150(a) ........................................................................ 1, 2
    Section 26150(a)(2) ................................................... 8, 19, 20, 22
    Section 26165 ................................................................................2
    Sections 26150-26225 ...................................................................1

**OTHER AUTHORITIES**

**BOOKS, ARTICLES & EDITORIALS**

*Concealed-Gun-Carrying Laws and Violent Crime: Evidence from State Panel Data*
    18 Int'l Rev. L. & Econ. 239 (1998), Jens Ludwig ..................... 17-18

*Crime, Deterrence, and Right-to-Carry Concealed Handguns*
    26 J Leg Stud 1, 12 (1997), John R. Lott and David B. Mustard ................ 17

*Do Right-to-Carry Laws Deter Violent Crime?*
    27 J. Legal Stud. 209 (1998), Dan A. Black & Daniel S. Nagin ................ 17

OFFICE OF THE COUNTY COUNSEL
COUNTY OF ORANGE

1

Page No.

2    **OTHER AUTHORITIES (cont.)**

3        **BOOKS, ARTICLES & EDITORIALS**

4

5    *Shooting Down the "More Guns, Less Crime" Hypothesis*
         55 Stan. L. Rev. 1193 (2003), Ian Ayres & John J. Donohue III ................ 17

6

7    *What a Balancing Test Will Show for Right-to-Carry Laws*
         71 Md. L. Rev. 1205, John R. Lott ................................................. 17

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

OFFICE OF THE COUNTY COUNSEL
COUNTY OF ORANGE

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiffs are unlikely to succeed on the merits of any of their claims for relief based on the Second and Fourteenth Amendments. Contrary to Plaintiffs' contentions, the Second Amendment right to keep and bears arms does not encompass the right to carry a loaded, concealed handgun in public. Neither California Penal Code[1] section 26150 nor the OCSD's Carry Concealed Weapon ("CCW") License Policy ("CCW Policy") substantially burden the right to bear arms in self-defense of the home, as articulated by *District of Columbia v. Heller,* 554 U.S. 570, 635 (2008). Under a proper rational basis analysis, both the statute and OCSD's CCW Policy survive. Moreover, both are facially constitutional under the Second and Fourteenth Amendments.

The primary focus of Plaintiffs' challenge is on Second Amendment grounds, based on the argument that the right to "keep and bear arms" includes the right to carry a loaded, concealed handgun in public. Plaintiffs challenge both the County's Sheriff's implementation of the California statutes governing the licensing of persons to carry loaded, concealed weapons in public and the statutes themselves on the basis of the Second and Fourteenth Amendments. Cal. Penal Code §§ 26150-26225. As stated, because Plaintiffs are not likely to succeed on the merits of their claims, the Motion for Preliminary Injunction should be denied.

## II.   STATEMENT OF FACTS

Plaintiffs challenge both the constitutionality of Penal Code section 26150(a), which directs the Sheriff (with certain exceptions) to require good cause to be shown prior to the issuance of a CCW License, and of the Sheriff's implementation of the Penal Code through OCSD's CCW Policy, Policy 218, which, consistent with Penal Code section 26150(a), requires applicants to show good cause as a prerequisite to the issuance of a CCW License. Prior to discussing Plaintiffs' individual claims, both the Penal Code and CCW Policy will

---

[1] References to "Penal Code" hereinafter refer to the California Penal Code.

OFFICE OF THE COUNTY COUNSEL
COUNTY OF ORANGE

1  be briefly described below.

2      A.      **The California Penal Code**.

3      Penal Code section 26150(a)[2] provides in relevant part:

4              (a) When a person applies for a license to carry a pistol,

5              revolver, or other firearm capable of being concealed upon the

6              person, the sheriff of a county may issue a license to that

7              person upon proof of all of the following:

8              (1) The applicant is of good moral character.

9              (2) Good cause exists for issuance of the license.

10             (3) The applicant is a resident of the county or a city within the

11             county, or the applicant's principal place of employment or

12             business is in the county or a city within the county and the

13             applicant spends a substantial period of time in that place of

14             employment or business.

15             (4) The applicant has completed a course of training as described in Section

16             26165.

17  The licensing statute authorizes a procedure for a limited number of persons who meet the

18  statutory criteria to be excepted from California's prohibition on the concealed carry of

19  firearms as contained in Penal Code section 25400(a).

20      Penal Code section 25400(a) prohibits the carrying of a concealed firearm, but the

21  Penal Code contains a variety of exceptions.  [*E.g.* Cal. Penal Code § 25450 (excluding

22  peace officers, honorably retired peace officers), § 25505 (excluding transport of unloaded

23  firearm in locked container), § 25515 (excluding possession of firearm in locked container

24  _____

25      [2] Penal Code section 26150, operative January 1, 2012, was previously codified in

26  former Penal Code section 12050.  Both the current and former section contains the "good

27  cause" requirement and similar licensing requirements.  In fact, the Law Revision

Committee notes state that section 25400(a) continues former section 12025(a) "without

28  substantive change."

OFFICE OF THE COUNTY COUNSEL
COUNTY OF ORANGE

1    by member of organization or club that collect and displays firearms), §§ 25525, 25530,

2    25535, 25550, (excluding transport between the person's place of business and residence or

3    other private property owned or possessed by that person, transport related to repair, sale,

4    loan or transfer, transportation related to coming and going from gun show or swap meet,

5    transport to or from lawful camping site), § 25600 (allowing for justifiable violation of the

6    statute when a person who possesses a firearm reasonably believes that person is in grave

7    danger because of circumstances forming the basis of a current restraining order issued by a

8    court against another person), § 25605 (exempting 25400 from application to any person

9    "who carries, either openly or concealed, anywhere within the citizen's or legal resident's

10   place of residence, place of business, or on private property owned or lawfully possessed by

11   the citizen or legal resident, any handgun.")]

12        Section 26150(a)'s predecessor, section 12025, has been interpreted to give

13   "'extremely broad discretion' to the sheriff concerning the issuance of concealed weapons

14   licenses." *Gifford v. City of Los Angeles*, 88 Cal.App.4th 801, 805 (2001) (quoting *Nichols*

15   *v. County of Santa Clara*, 223 Cal.App.3d 1236, 1241 (1990)). The section "explicitly

16   grants discretion to the issuing officer to issue or not issue a license to applicants meeting

17   the minimum statutory requirements." *Erdelyi v. O'Brien*, 680 F.2d 61, 63 (9th Cir. 1982).

18   Under state law, this discretion must be exercised in each individual case. "It is the duty of

19   the sheriff to make such an investigation and determination, on an individual basis, on every

20   application under section 12050." *Salute v. Pitchess*, 61 Cal.App.3d 557, 560-561 (1976).

21        **B.**   **Orange County's Licensing Program.**

22        Plaintiffs challenge the "good cause" provision of OCSD's CCW Policy. Pursuant to

23   the CCW Policy, "good cause" is determined by OCSD on an individual basis. See Decl. of

24   Lt. Sheryl Dubsky ("Dubsky Decl.") at ¶¶ 3, 6; Decl. of Melissa Soto ("Soto Decl.") at ¶3.

25   However "non-specific, general concerns about personal safety are insufficient." *See*, Ex.

26   A, Policy 218, to Dubsky Decl.; Dubsky Decl. at ¶ 5. On the point of "good cause" the

27   OCSD Policy specifically states as follows:

28   //

-3-

OFFICE OF THE COUNTY COUNSEL
COUNTY OF ORANGE

1    Criteria that may establish good cause include the following:

2           Specific evidence that there has been or is likely to be an

3    attempt on the part of a second party to do great bodily harm to the

4    applicant.

5           The nature of the business or occupation of the applicant is such

6    that it is subject to high personal risk and/or criminal attack, far greater

7    risk than the general population.

8           A task of the business or occupation of the applicant requires

9    frequent transportation of large sums of money or other valuables and

10   alternative protective measures or security cannot be employed.

11          When a business or occupation is of a high-risk nature and

12   requires the applicant's presence in a dangerous environment.

     The occupation or business of the applicant is such that no means of

13   protection, security or risk avoidance can mitigate the risk other than the

14   carrying of a concealed firearm.

15

16          Personal protection is warranted to mitigate a threat to the

17   applicant that the applicant is able to substantiate.

18          Good cause could include, but not be limited to,

19   documented instances of threats to the personal safety of the

20   applicant, his/her family or employees.  Threats to personal safety

21   may be verbal or demonstrated through actual harm committed in the

22   place of work, neighborhood or regular routes of travel for

23   business.  The applicant should articulate the threat as it applies

24   personally to the applicant, his/her family or employees. Non-

25   specific, general concerns about personal safety are insufficient.

26          The finding of good cause should recognize that individuals

27   may also face threats to their safety by virtue of their profession,

28   business or status and by virtue of their ability to readily access

OFFICE OF THE COUNTY COUNSEL
COUNTY OF ORANGE

-4-

1      materials that if forcibly taken would be a danger to society.  Threats

2      should be articulated by the applicant by virtue of his / her unique

3      circumstances.

4      Note: These examples are not intended to be all-inclusive they

5      are provided merely for your reference.  Also, state and local laws

6      do not prohibit an adult from having a concealed weapon in their

7      home or place of business.  Ex. A to Dubsky Decl.

8      Contrary to Plaintiffs' allegations, the CCW Policy does not state that an applicant

9  has to be a target of a specific threat or engage in a business that subjects them to much

10  more danger than the general public.  The policy's language is broader than that.  Indeed,

11  the policy specifically provides that good cause can be found when "[p]ersonal protection is

12  warranted to mitigate a threat to the applicant that the applicant is able to substantiate."  Ex. A to

13  Dubsky Decl.

14      **C.**    **Plaintiffs' Claims**.

15      Plaintiffs, McKay, Kilgore, Willms, Kogen, and Weiss, allege that they are residents

16  of Orange County and each is eligible to possess firearms under state and federal law and

17  currently own a handgun.  First Amended Complaint ("FAC"), ¶ 6.  Each of Plaintiff's

18  individual claims, are briefly described below.

19      **1.**    **Dorothy McKay.**

20      Dorothy McKay alleges that she is a public school teacher and National Rifle

21  Association-Certified Firearms Instructor/Range Safety Officer who on October 25, 2011,

22  applied for a CCW License from Sheriff Hutchens, asserting a general desire for self-

23  defense as her "good cause" due to her traveling alone in remote areas, sometimes with

24  valuables, for her work.  Her CCW License was denied on December 28, 2011.  FAC, ¶  7.

25  McKay's CCW License application was denied for failure to establish good cause because

26  she demonstrated merely a generalized fear for her safety.  Dubsky Decl. at ¶ 12; Ex. B to

27  Dubsky Decl.

28  //

OFFICE OF THE COUNTY COUNSEL
COUNTY OF ORANGE

### 2.    Phillip Willms

Phillip Willms alleges that he is an Orange County business owner and a professional shooter and that he applied to Sheriff Hutchens on November 1, 2011, for a CCW License asserting a general desire for self-defense as his "good cause" due to his business activities and hobbies requiring him to have valuable possessions on his person. FAC, ¶ 9. Willms further alleges that on January 24, 2012, his application was denied for lack of good cause. FAC, ¶10. Plaintiff Willms requested reconsideration of his denial and on March 21, 2012, his denial was confirmed. *Id.* Willms' CCW License application was denied for failure to establish good cause because he expressed a concern that he *may* be a target due to his business activities, but then stated that "[w]ith what I have told you so far, this is still not the reason I feel I need a CCW." Dubsky Decl. at ¶ 13; Ex. C to Dubsky Decl.

### 3.    Fred Kogen

Plaintiff Kogen alleges that he is a medical doctor who travels performing infant circumcisions, which some consider controversial and for which some have threatened those doctors, including Kogen. (FAC, ¶11). Kogen alleges that he submitted an application for a CCW License which was denied on July 10, 2012, for lack of good cause. FAC, ¶ 12. Kogen's CCW License application was denied for failing to establish good cause because the alleged threat to him constituted an unverified email that denounced his profession and contained no imminent threat. Dubsky Decl. at ¶ 15; Ex. E to Dubsky Decl.

### 4.    David Weiss

Plaintiff Weiss alleges he is a pastor who travels around the County to meet with church members. He applied to Sheriff Hutchens for a CCW License asserting a general desire for self-defense as his "good cause" due to frequenting unknown areas to sometimes meet unknown people in often times emotionally charged situations. FAC, ¶13. On March 21, 2012, Plaintiff Weiss CCW License application was denied for lack of good cause. *Id.* at ¶ 14. Weiss' CCW License application was denied for failing to establish good cause because there was no showing of a particular incident or threat and instead, Mr. Weiss stated he need a CCW License "due to the changing times." Dubsky Decl. at ¶ 14; Ex. D to

-6-

OFFICE OF THE COUNTY COUNSEL
COUNTY OF ORANGE

1   Dubsky Decl.

2              **5.       Diana Kilgore**

3        Diana Kilgore did not apply for a CCW license, alleging that doing so would be futile

4   because she does not meet the Sheriff's standard of "good cause" articulated in the Sheriff's

5   written policy.  (FAC, ¶ 15.)

6              **6.       The CRPA Foundation**

7        Plaintiff CPRA Foundation is an association that conducts firearm safety advocacy

8   and advocates in court through litigation brought to benefit the CPRA Foundation.  CPRA

9   Foundation alleges that the OCSD's CCW Policy frustrates the CPRA Foundation's mission

10  to promote the right to armed self-defense.  FAC, ¶¶ 17 and 18.  The CPRA Foundation

11  represents the interests of its members who reside in the County and desire to obtain a CCW

12  License but have been denied based upon lack of good cause or have refrained from

13  applying for a license because they do not meet the good cause requirement.  FAC, ¶ 19 and

14  Decl. of Silvio Montanarella filed in Support of Motion for Preliminary Injunction, ¶8.

15  **III.    ARGUMENT**

16       **A.    Plaintiffs' Request for a Preliminary Injunction Should be Denied.**

17       A preliminary injunction is extraordinary equitable relief that should not be granted

18  unless plaintiff can establish the following: "that he is likely to succeed on the merits, that

19  he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of

20  equities tips in his favor, and that an injunction is in the public interest."  *Winter v. Natural*

21  *Resources Defense Council, Inc., et al.*, 555 U.S. 7, 20 (2008) (citing *Munaf v. Geren*, 553

22  U.S. 674, 689-690 (2008) and *Amoco Production Co. v. Gambell*, 480 U.S. 531, 542

23  (1987)).  "A preliminary injunction is an extraordinary remedy never awarded as of right."

24  *Winter*, 555 U.S. at 24, citing *Munaf*, 553 U.S., at 689-690.

25              **1.       Plaintiffs Are Not Likely to Succeed on the Merits of Their First and**

26                         **Third Claims for Violation of the Second Amendment.**

27       Plaintiffs' first claim essentially alleges that OCSD's CCW Policy that does not

28  recognize a general desire for self-defense as "good cause" for the issuance of a CCW

1   License deprives Plaintiffs of their Second Amendment right to bear arms.  *See generally*,

2   FAC, ¶¶ 65-69.  Plaintiffs' third claim alleges that Penal Code section 26150(a)(2)'s "good

3   cause" provision is also unconstitutional under the Second Amendment and that Sheriff's

4   Hutchens cannot require, under Penal Code 26150(a)(2), that good cause be shown prior to

5   issuance of a CCW License.  FAC, ¶¶ 76-80.  As discussed below, neither Penal Code

6   section 26150(a)(2) nor OCSD's CCW Policy violate the Second Amendment.

7              a.      ***The Scope of the Second Amendment Right Does Not Extend to***

8                     ***Carrying Concealed Weapons Outside the Home***

9              In *District of Columbia v. Heller*, 554 U.S. 570 (2008), the Supreme Court considered

10   "whether a District of Columbia prohibition on the possession of usable handguns in the

11   home violates the Second Amendment to the Constitution."  *Id.* at 573-576.  A majority of

12   the court held "that the District's ban on handgun possession *in the home* violates the

13   Second Amendment, as does its prohibition against rendering any lawful firearm in the

14   home operable for the purpose of immediate self-defense."  *Id.* at 635 (italics added).  The

15   Court in *Heller* did not go beyond the limited facts of the case and beyond the issue – a

16   complete ban on usable handgun possession in the home – and this Court should decline to

17   expand *Heller's* ruling in accordance with Plaintiffs' arguments.  The right articulated by

18   *Heller and McDonald v. City of Chicago*, ___ U.S. ___, 130 S.Ct. 3020, 177 L.Ed.2d 894

19   (2010), does not extend to carrying a concealed and loaded handgun in public.

20             The court emphasized the limited nature of its ruling:  "Like most rights, the right

21   secured by the Second Amendment is not unlimited.  From Blackstone through the 19th-

22   century cases, commentators and courts routinely explained that the right [to keep and bear

23   arms] was not a right to keep and carry any weapon whatsoever in any manner whatsoever

24   and for whatever purpose."  *Heller*, 554 U.S. at 626.  Thus, the Court specifically stated that

25   the "core right" embodied in the Second Amendment does not include the right to keep and

26   carry in any manner.

27             *Heller* enumerated a nonexclusive list of the many "presumptively lawful regulatory

28   measures" related to firearms.  *Heller*, 554 U.S. at 627, n. 26 ("We identify these

OFFICE OF THE COUNTY COUNSEL
COUNTY OF ORANGE

-8-

1   presumptively lawful regulatory measures only as examples; our list does not purport to be

2   exhaustive"). The Court declared:

> 3   [T]he majority of the 19th-century courts to consider the question held that
>
> 4   *prohibitions on carrying concealed weapons were lawful* under the Second
>
> 5   Amendment or state analogues. [Citations.] Although we do not undertake
>
> 6   an exhaustive historical analysis today of the full scope of the Second
>
> 7   Amendment, nothing in our opinion should be taken to cast doubt on
>
> 8   longstanding prohibitions on the possession of firearms by felons and the
>
> 9   mentally ill, or laws forbidding the carrying of firearms in sensitive places
>
> 10   such as schools and government buildings, or laws imposing conditions and
>
> 11   qualifications on the commercial sale of arms.

12   *Heller*, 554 U.S. at 626-627 (fn. omitted, italics added). Thus, *Heller* recognizes that

13   throughout history prohibitions on carrying concealed weapons were declared lawful.

14        Plaintiffs' arguments are premised on the notion that *Heller* stands for the general

15   right to carry a loaded weapon in public for self-defense purposes. To the contrary, the

16   Court in both *Heller*, and later in *McDonald*, 130 S.Ct. at 3036, 3044, 3047, went to great

17   lengths to explain that the scope of *Heller* extends only to the right to keep a firearm in the

18   *home* for self-defense. In *McDonald*, the Supreme Court specifically identified its prior

19   holding: "our central holding in *Heller*: [was] that the Second Amendment protects a

20   personal right to keep and bear arms for lawful purposes, most notably for self-defense

21   within the home." 130 S.Ct. at 3044. The Supreme Court in *McDonald* did not expand the

22   scope of the right articulated in *Heller*, rather, the *McDonald* Court held that the Second

23   Amendment was incorporated by the Fourteenth Amendment and thus, applied to the states.

24        The prevailing judicial interpretation of the scope of the Second Amendment right

25   after *Heller* confirms that *Heller* limits the core Second Amendment right to the right to

26   bear arms for self-defense in the home. *See Penuliar v. Mukasky,* 528 F.3d 603, 614 (9th

27   Cir. 2008) (Supreme Court decisions are limited to the boundaries of the question before the

28   Court.) Numerous courts have recognized the limited scope of the Second Amendment

OFFICE OF THE COUNTY COUNSEL
COUNTY OF ORANGE

1  right articulated by *Heller* and *McDonald*.  The Ninth Circuit Court of Appeals has

2  indicated *Heller's* limited scope in *United States v. Vongxay*, 594 F.3d 1111, 1114-1115

3  (9th Cir. 2010) (describing the *Heller* right as "the right to register and keep a loaded

4  firearm in [the] home for self-defense and noting "Courts often limit the scope of their

5  holdings, and such limitations are integral to those holdings").

6          Two California District Courts have ruled similarly regarding *Heller's* scope in

7  *Peruta v. County of San Diego*, 758 F.Supp.2d 1106, 1111-1112 (S.D. Cal. 2010); *Richards*

8  *v. County of Yolo*, 821 F.Supp.2d 1169, 1174-1175 (E.D. Cal. 2011) ("*Heller* cannot be read

9  to invalidate Yolo County's concealed weapon policy, as the Second Amendment does not

10  create a fundamental right to carry a concealed weapon in public.")  These two decisions

11  involved Second Amendment challenges similar to those presented here.  In *Peruta*, the

12  sheriff's policy at issue specifically stated, much like OCSD's CCW Policy, that "good

13  cause" for obtaining a concealed carry license did not include a "[g]eneralized fear for one's

14  personal safety."  785 F.Supp.2d at 1110.  In *Richards*, the sheriff's policy also excluded as

15  "good cause" the reason of self-defense 'without credible threats of violence.'"  In both

16  *Richards* and *Peruta*, the courts upheld the validity of Penal Code section 26150 (formerly

17  12050) and the sheriff's policies implementing that section against Second Amendment

18  challenges.  *Peruta*, 758 F.Supp.2d at 1113-1117; *Richards*, 821 F.Supp.2d at 1174-1177.)

19  A New York District Court case has also agreed that the right articulated by *Heller* does not

20  extend to carrying a concealed and loaded handgun in public.  *Kachalsky v. Cacace*, 817

21  F.Supp.2d 235, 262-265 (S.D. N.Y. 2011).

22          California state courts have uniformly reached the same conclusion regarding the

23  scope of the Second Amendment right.  *People v. Mitchell*, 2012 WL 3660270, --

24  Cal.Rptr.3d -- (2012) (stating "the *Heller* opinion specifically expressed constitutional

25  approval of the accepted statutory proscriptions against carrying concealed weapons.");

26  *People v. Flores*, 169 Cal.App.4th 568, 576-577 (2008) ("[T]he *Heller* opinion emphasizes,

27  with apparent approval, that "'the majority of the 19th-century courts to consider the

28  question held that prohibitions on carrying concealed weapons were lawful under the

OFFICE OF THE COUNTY COUNSEL<br>COUNTY OF ORANGE

Second Amendment or state analogues.'"); *People v. Yarbrough*, 169 Cal.App.4th 303, 312-314. (2008) (stating "in the aftermath of *Heller* the prohibition 'on the carrying of a concealed weapon without a permit, continues to be a lawful exercise by the state of its regulatory authority notwithstanding the Second Amendment.'"); *People v. Ellison*, 196 Cal.App.4th 1342, 1350-1351 (2011) (similar).

Contrary to Plaintiffs' argument, the Court in *Heller* did not hold the right to "bear" as anything more than the right to defend "hearth and home." The Seventh Circuit has cautioned that the language of *Heller* "warns readers not to treat *Heller* as containing broader holdings than the Court set out to establish .... The opinion is not a comprehensive code; it is just an explanation of the Court's disposition. Judicial opinions must not be confused with statutes, and general expressions must be read in light of the subject under consideration." *United States v. Skoien*, 614 F.3d 638, 640 (7th Cir. 2010) (en banc).

Plaintiffs cite three out-of-state district cases to support their assertion of the scope of the right articulated in *Heller* as extending to carrying loaded concealed handguns in public. However; none of the cases cited actually go that far. In *Wollard v. Sheridan*, 2012 WL 6975674 (D. Md. Mar. 2, 2012), the district court considered whether Maryland's prohibition on the carrying of a handgun outside the home, openly or concealed, without a permit, unless "good and substantial cause" could be shown violated the Second Amendment. *Id.* at *1.

The district court recognized that the "core right" articulated in *Heller* was the right to keep and bear arms in the home. *Id.* at * 5 (the court noted that the right to keep and bear arms outside the home was a non-core right.) Despite this recognition of the "core right" articulated in *Heller*, the *Wollard* court inexplicably, and in reliance on the opinion of a Fourth Circuit Judge that they recognized was not in the majority, concluded that the "signposts" contained in the *Heller* decision indicated that the right extends beyond the home. *Id.* at *7 (citing *United States v. Masciandaro*, 638 F.3d 458, 468 (4th Cir. 2011). This interpretation is not supported by the specific reasoning in *Wollard*. Moreover, the court in *Wollard* made clear that it was not considering the constitutional question involved

-11-

1   in this case: "Nor does the Court speculate as to whether a law that required a "good and

2   substantial reason" only of law-abiding citizens who wish to carry a *concealed* handgun

3   would be constitutional." *Wollard,* at \*12. For the foregoing reasons, *Wollard* should not

4   be considered by this court as evidence of the "growing consensus that there is a right to

5   armed self-defense in public." Plaintiffs' Brief at p. 13 fn. 7.

6          The other two cases cited by Plaintiffs also do not expand the scope of *Heller* in the

7   manner Plaintiffs request – to the right to carry a concealed handgun in public. In *United*

8   *States v. Weaver*, 2012 WL 727488 (S.D. W. VA. Mar. 6, 2012), the district court in

9   addressing a Second Amendment challenge to a federal law prohibiting a person from

10  possessing firearms while being employed by a convicted felon, recognized that the *Heller*

11  Court articulated the "core right" as "'the right of law-abiding, responsible citizens to use

12  arms in the defense of hearth and home.'" *Id.* at \* 2. Recognizing that the law did not

13  burden the core right, the district court in *Weaver* refused to apply strict scrutiny. *Id.* at \*\*

14  5-6.

15         In *Bateman v. Perdue*, 2012 WL 3068580 (E.D. N.C. Mar. 29, 2012), the district

16  court admitted that "considerable uncertainty exists regarding the scope of the Second

17  Amendment right to keep and bear arms." *Id.* at \* 4. However, without citation to authority

18  or providing reasoning concluded, "it undoubtedly is not limited to the confines of the

19  home." *Id.* at \* 4. In *Bateman,* Plaintiffs challenged a North Carolina statute making it a

20  misdemeanor "for any person to transport or possess off his own premises any dangerous

21  weapon or substance in any area" in which a state of emergency has been declared. *Id.* at \*

22  1. *Bateman* cites *Heller's* historical review and textual analysis of the "right to keep and

23  bear arms" for militia purposes, self-defense, and hunting as indicative that the Second

24  Amendment right extends beyond the home. *Id.* at \* 4.

25         Such reliance on the Supreme Court's textual analysis has been criticized and should

26  not serve as a basis for reading *Heller* in an expansive manner:

27                 This textual interpretation does not stand on its own, however,

28                 but rather appears within the context of, and is provided solely

OFFICE OF THE COUNTY COUNSEL
COUNTY OF ORANGE

OFFICE OF THE COUNTY COUNSEL
COUNTY OF ORANGE

1   to support, the Court's holding that the Second Amendment

2   gives rise to an individual right, rather than a collective right

3   connected to service in a militia . . . . Nor does this textual

4   interpretation somehow expand the Court's holding, as such a

5   reading overlooks the opinion's pervasive limiting language

6   discussed above. *See, e.g., People v. Dawson,* 403 Ill.App.3d

7   499, 343 Ill.Dec. 274, 934 N.E.2d 598, 605 (2010) ("The

8   specific limitations in *Heller* and *McDonald* applying only to a

9   ban on handgun possession in a home cannot be overcome by

10  defendant's pointing to the *Heller* majority's discussion of the

11  natural meaning of 'bear arms' including wearing or carrying

12  upon the person or in clothing."), *cert. denied,* —— U.S. ——,

13  131 S.Ct. 2880, 179 L.Ed.2d 1194 (2011).   *Kachalsky,* 817

14  F.Supp.2d at 262.

15      The weight of California federal and state authority demonstrates that the scope of the

16  Second Amendment right is limited to handgun possession in the home, but does not extend

17  to possession and carrying of a concealed handgun in public.  Thus, OCSD's CCW Policy

18  concerning carrying of concealed weapons falls outside the scope of the "core right"

19  established by the Second Amendment.  Thus, the CCW Policy does not burden the core

20  Second Amendment right to possession of handguns in the home.

21          **b.    *Because OCSD's CCW Policy Does Not Burden the Second***

22                  ***Amendment Right Articulated in Heller, Rational Basis Review is***

23                  ***Appropriate***

24      The Court in *Heller,* contrary to Plaintiffs' assertion, did suggest that some form of a

25  means-end test is appropriate in analyzing Second Amendment challenges to policies or

26  statutes. *Heller,* 554 U.S. 570, at 628-629.  While the Court in *Heller* declined to adopt a

27  level of scrutiny within the means-end test to be used when evaluating laws regulating the

28  "core" Second Amendment right, post-*Heller* numerous federal circuit courts have

1   determined that only regulations that substantially burden the core right to keep and bear

2   arms trigger heightened scrutiny under the Second Amendment. *Nordyke v. King,* 644 F.3d

3   776, 786 (9th Cir. 2011), vacated following hearing en banc by 681 F.3d (2012) (holding

4   that only regulations which substantially burden the right to keep and to bear arms trigger

5   heightened scrutiny under the Second Amendment and where no such substantial burden is

6   imposed, rational basis review will apply.)  Although the *Nordyke* decision was vacated by

7   the en banc panel, a recent District Court found its holding remains persuasive authority on

8   the issue of the level of scrutiny that should apply.  *See Scocca v. Smith*, 2012 WL 2375203

9   *6 (June 22, 2012) ("Although the *Nordyke* panel decision is no longer binding authority (in

10  light of the en banc decision), the reasoning of the panel decision is still persuasive—*i.e.,*

11  that "'heightened scrutiny does not apply unless a regulation substantially burdens the right

12  to keep and to bear arms for self-defense.'");  *see Masciandaro*, 638 F.3d at 470-471

13  (finding that strict scrutiny did not apply to a federal statute prohibiting the carrying or

14  possession of a loaded handgun in a motor vehicle within a national park area); *United*

15  *States v. Chester,* 628 F.3d 673, 680-683 (4th Cir. 2010) (employing a two prong analysis;

16  first considering whether the law imposes a substantial burden on conduct falling within the

17  scope of the Second Amendment and if the challenged law is not within the scope then the

18  law is valid, and second determining the level of scrutiny); *United States v. Marzzarella,*

19  614 F.3d 85, 89 (3d Cir. 2010) (same).

20       Because concealed carry outside the home is not a Second Amendment right and the

21  licensing practice does not burden the core right articulated in *Heller* of self-defense in the

22  home, no heightened scrutiny is appropriate in this case.  There is no substantial burden on

23  the exercise of Second Amendment rights by the good cause requirement set forth in Penal

24  Code section 26150 or the Sheriff's policy requiring a showing of good cause.  *See,*

25  *Richards*, 821 F.Supp.2d at 1174-1775; *Ellison*, 196 Cal.App.4th at 1350-1351; *Flores*, 169

26  Cal.App.4th at 576-577; *Yarbrough*, 169 Cal.App.4th at 312-314.  Recently, in *Richards*, a

27  California district court concluded in a case challenging a similar "good cause" policy

28  related to concealed carry licenses that rational basis or reasonableness review applies to

OFFICE OF THE COUNTY COUNSEL
COUNTY OF ORANGE

-14-

1   laws that regulate, but do not significantly burden, fundamental rights.  Here, as in

2   *Richards*, neither California law nor the Sheriff's policy impedes the ability of individuals

3   to defend themselves with firearms in their homes.  The Sheriff's policies and practices in

4   limiting concealed carry licensing to individuals with specifically identifiable and

5   documented needs for concealed carry have no impact on the Second Amendment's core

6   right of self-defense in the home.

7          Under rational basis review, a statute will be "upheld if [it is] rationally related to a

8   legitimate governmental purpose."  *Stormans, Inc. v. Selecky,* 586 F.3d 1109, 1137 (9th Cir.

9   2009; see also *United States v. Whitlock,* 639 F.3d 935, 941 (9th Cir. 2011).  "To invalidate

10  a law reviewed under this standard, '[t][he burden is on the one attacking the legislative

11  arrangement to negative every conceivable basis which might support it.'"  *Stormans,* 586

12  F.3d at 1137 (citation omitted).  Plaintiffs cannot meet this burden.  Because the OCSD's

13  CCW Policy requiring a specific showing of good cause does not substantially burden the

14  Second Amendment right articulated in *Heller*, and because regulating concealed firearms is

15  an essential part of Orange County's efforts to maintain public safety and reduce gun-

16  related crime, the policy is more than rationally related to legitimate governmental goals.

17  Decl. of Franklin E. Zimring ("Zimring Decl.") at ¶¶ 7, 13-22, 29-31; Decl. of Donald

18  Barnes ("Barnes Decl.") at ¶¶ 6-8, 13-16; *see Richards,* 821 F.Supp.2d at 1175 (holding that

19  Yolo County's concealed carry policy requiring a showing of "good cause" survives

20  rational basis scrutiny).

21              **c.   *Intermediate Scrutiny is Appropriate if This Court Finds that OCSD's***

22                     ***CCW Policy Substantially Burdens a Second Amendment Right***

23          If this court were to depart from the limited holding of *Heller* and *McDonald* and

24  conclude that the concealed carry policy at issue here substantially burdens the Second

25  Amendment right to possess handguns in the home, then intermediate scrutiny would be the

26  appropriate level of review.  The CCW Policy clearly meets this standard.

27          To survive intermediate scrutiny, the challenged provision must be substantially

28  related to the achievement of important government interests.  *Craig v. Boren*, 429 U.S.

OFFICE OF THE COUNTY COUNSEL
COUNTY OF ORANGE

-15-

190, 197 (1976); *Mississippi Univ. for Women v. Hogan*, 458 U.S. 718, 724 (1982); *see also Clark v. Jeter*, 486 U.S. 456, 461 (1988) ("To withstand intermediate scrutiny, a statutory classification must be substantially related to an important government objective.").   It requires only that the fit between the challenged regulation and the stated objective must be reasonable, not perfect, and does not require that the regulation be the least restrictive means of serving the interest. *See, e.g. Lorrilard Tobacco Co. v. Reilly*, 533 U.S. 525, 556 (2001).

Even where courts have determined that the regulation at issue substantially burdens the right to bear arms, post-*Heller* courts have applied intermediate scrutiny, not strict scrutiny. *See Skoien*, 614 F.3d at 641 (intermediate scrutiny applied for statute prohibiting possession of firearm by persons convicted of domestic violence misdemeanors); *Marzzarella*, 614 F.3d at 98-99 (applying intermediate scrutiny to statute prohibiting possession of guns with obliterated serial numbers); *Chester*, 628 F.3d at 680-683 (intermediate scrutiny applied for statute prohibiting possession of firearm by persons convicted of domestic violence misdemeanors); *Peruta*, 758 F.Supp.2d at 1116-1117 (intermediate scrutiny applied to sheriff's concealed weapons license policy, that in accord with California Penal Code section 26150, required a "good cause" showing to obtain a license); *Kachalsky*, 817 F.Supp.2d at 268 (intermediate scrutiny applied to New York statute providing that licenses to have and carry concealed handguns shall be issued to any person when proper cause exists for the issuance thereof); *Mitchell*, 2012 WL 3660270 at * 4-6 (intermediate scrutiny applied to prohibition on the carrying of concealed dirk or dagger); *Ellison*, 196 Cal.App.4th at 1347 (applying intermediate scrutiny to statutory prohibition against carrying a concealed weapon in a vehicle).

If intermediate scrutiny applied, the Sheriff's policy should be upheld, as maintaining public safety and preventing crime are clearly important (if not paramount) government interests and the regulation of concealed firearms in public is a critical factor in accomplishing that interest. *See,* Zimring Decl.; Barnes Decl.; *see, e.g., United States v. Salerno*, 481 U.S. 739, 750 (1987); *Schall v. Martin*, 467 U.S. 253, 264 (1984); *Kelley v.*

OFFICE OF THE COUNTY COUNSEL
COUNTY OF ORANGE

1    *Johnson*, 425 U.S. 238, 247 (1976) ("The promotion of safety of persons and property is

2    unquestionably at the core of the State's police power . . . ."); *Yarbrough*, 169 Cal.App.4th

3    at 312-314 (recognizing that "Unlike possession of a gun for protection within a residence,

4    carrying a concealed firearm presents a recognized "threat to public order," and is

5    "'prohibited as a means of preventing physical harm to persons other than the offender.'

6    [Citation.]."); *People v. Hodges,* 70 Cal.App.4th 1348, 1357 (1999) (stating that a person

7    who carries a concealed firearm on his person or in a vehicle "which permits him immediate

8    access to the firearm but impedes other from detecting its presence, poses an 'imminent

9    threat to public safety . . . .' [Citation.].)

10        Plaintiffs cite to a discredited researcher, John R. Lott, for the proposition that

11    OCSD's CCW Policy does not serve any government interest because restricting access to

12    concealed carry licenses does not further any public safety interest.  Out of a total of 60

13    footnotes in the 2012 article cited by Plaintiffs, Lott cites his own previous research, which

14    is detailed in John R. Lott and David B. Mustard, *Crime, Deterrence, and Right-to-Carry*

15    *Concealed Handguns,* 26 J Leg Stud 1, 12 (1997), 22 times.  He also includes footnotes

16    stating; "taken from conversations with... during 2002-2003" or, "my own extensive

17    research."  *See e.g.* John R. Lott, *What a Balancing Test Will Show for Right-to-Carry*

18    *Laws,* 71 Md. L. Rev. 1205, 1210 fn. 25, 1210 fn. 26, 1211 fn. 30.

19        Lott's 1997 research on use of guns and the effect of "shall issue" licensing laws on

20    violent crimes (referred to as the "more guns, less crime" hypothesis) has been widely

21    criticized and discredited.  *See, e.g.* Ian Ayres & John J. Donohue III, *Shooting Down the*

22    *"More Guns, Less Crime" Hypothesis*, 55 Stan. L. Rev. 1193 (2003); Dan A. Black &

23    Daniel S. Nagin, *Do Right-to-Carry Laws Deter Violent Crime?,* 27 J. Legal Stud. 209

24    (1998) ("John R. Lott and David B. Mustard conclude that right-to-carry laws deter violent

25    crime.  Our reanalysis of Lott and Mustard's data provides no basis for drawing confident

26    conclusions about the impact of right-to-carry laws on violent crime.); Jens Ludwig,

27    *Concealed-Gun-Carrying Laws and Violent Crime: Evidence from State Panel Data*, 18

28    Int'l Rev. L. & Econ. 239, 240, 241 (1998) (concluding that Lott's 1997 study concluding

OFFICE OF THE COUNTY COUNSEL
COUNTY OF ORANGE

-17-

OFFICE OF THE COUNTY COUNSEL
COUNTY OF ORANGE

1   that "concealed handguns are the most cost-effective method of reducing crime thus far

2   analyzed by economists" was incorrect and that instead, the "results [of reanalysis of Lott's

3   data] suggest that shall-issue laws have resulted, if anything, in an *increase* in adult

4   homicide rates.")

5        As stated by a recent District Court, reasonable and effective gun regulations are

6   integral to the exercise of the police power and the government has "an important and

7   substantial interest in public safety and in reducing the rate of gun use in crime.  In

8   particular, the government has an important interest in reducing the number of concealed

9   weapons in public in order to reduce the risks to other members of the public who use the

10  streets and go to public accommodations." *Peruta,* 758 F.Supp.2d at 1117 (upholding under

11  the intermediate scrutiny standard a similar policy requiring "good cause" for issuance of a

12  concealed carry license).  Sheriff Hutchens' CCW Policy and Penal Code section 26150's

13  "good cause" requirement help to maintain public safety and prevent crime which are

14  clearly important (if not paramount) government interests.

15                    ***d.    Strict Scrutiny Does Not Apply***

16        Plaintiffs argue that the Second Amendment guarantees a "fundamental right," hence

17  "strict scrutiny" should apply.  The *Heller* decision implicitly rejected strict scrutiny by

18  asserting that certain regulations are "presumptively lawful regulatory measures." *Heller*,

19  554 U.S. at 626-627 & fn. 26.  Strict scrutiny's requirement that a law be narrowly tailored

20  to serve a compelling government interest is also inconsistent with *Heller's* recognition that

21  legislatures be allowed to employ a variety of tools for combating the problem of gun

22  violence. *Heller,* 554 U.S. at 636.

23        It appears that only one federal decision after *Heller* has applied strict scrutiny –

24  where the defendant, who was convicted of domestic violence, was charged with violating

25  the law in possession of a firearm in his own home -- but it still upheld the challenged

26  regulation. *See United States v. Engstrum*, 609 F.Supp.2d 1227, 1231 (D.Utah 2009)

27  (applying strict scrutiny, but rejecting challenge to federal statute prohibiting possession of

28  firearms by those with domestic violence convictions).  The OCSD's CCW Policy here has

-18-

1   no regulatory effect on guns in the home and does not rise to the level of burdening a

2   fundamental right that would require strict scrutiny.  Where regulations do not affect the

3   possession of firearms in the home, such as the subject licensing procedures, there is no

4   trend toward any heightened level of scrutiny.

5           e.      ***Neither OCSD's CCW Policy nor Penal Code Section***

6                   ***26150(a(2)) are Unconstitutional in All of Their Applications,***

7                   ***Therefore, Plaintiffs' Facial Challenges Are Not Likely to***

8                   ***Succeed***

9           Plaintiffs also allege a facial challenge to OCSD's CCW Policy's and Penal Code

10  section 26150(a)(2)'s good cause provision.[3]  The Supreme Court has recognized that there

11  are generally two types of facial challenges to a law's constitutionality.  First, a party

12  ordinarily "can only succeed in a facial challenge by 'establish[ing] that no set of circum-

13  stances exists under which the [law] would be valid,' i.e., that the law is unconstitutional in

14  all of its applications." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442,

15  128 S. Ct. 1184, 1190 (2008) (quoting *Salerno*, 481 U.S. at 745.)  The Supreme Court's

16  "cases recognize a second type of facial challenge in the First Amendment context under

17  which a law may be overturned as impermissibly overbroad because a 'substantial number'

18  of its applications are unconstitutional, 'judged in relation to the statute's plainly legitimate

19  sweep.'" *Id.* at 1190 n.6 (quoting *New York v. Ferber*, 458 U.S. 747, 769-71, 102 S. Ct.

20  3348, 73 L. Ed. 2d 1113 (1982)).

21          As in *Richards*, 821 F.Supp.2d at 1176, which involved a similar challenge to a

22  sheriff's "good cause" policy, this Court should not invalidate the "good cause" portions of

23  the Penal Code or the OCSD's CCW Policy unless Plaintiffs "can demonstrate that there are

24  zero circumstances under which [the Sheriff] could clearly issue a concealed weapons

25  permit to someone who demonstrate plausible good cause under the terms of the policy . . .

26  _____

27          [3] The State has not been named as a party, which seems to be necessary when directly

28  challenging the constitutionality of a state statute, but Defendants leave this issue for
    another day.

OFFICE OF THE COUNTY COUNSEL
COUNTY OF ORANGE

1    ." As the court in *Richards* stated, "[a]ny inquiry into the facial constitutionality . . . is

2    futile, for it is both 'undesirable' and near impossible for the Court to 'consider every

3    conceivable situation which might possibly arise in the application of complex and

4    comprehensive legislation.'" *Id.* at 1176 (quoting *Gonzales v. Carhart,* 500 U.S. 124, 168,

5    127 S.Ct. 1610, 167 L.Ed.2d 480 (2007)).

6       Plaintiffs simply cannot establish that "no set of circumstances exists" under which

7    Penal Code section 26150(a)(2)'s or the OCSD's CCW Policy's "good cause" requirement

8    would be constitutionally valid and thus, will likely fail to satisfy the essence of a facial

9    challenge. *Salerno,* 481 U.S. at 745.

**B.    Plaintiffs are Not Likely to Succeed on their First and Fourth Claims For Alleged Violation of the Equal Protection**

12      Plaintiffs' second claim alleges that OCSD's CCW Policy that does not recognize

13   "the general desire for self defense as good cause" for issuance of a CCW License under

14   Penal Code section 26150(a)(2), creates a classification of Orange County residents whose

15   Second Amendment rights are abrogated while other Orange County's residents' rights are

16   not so infringed.  Plaintiffs further claim that OCSD's CCW Policy is unconstitutional as

17   applied to Plaintiffs because its implementation puts them in a classification of adults who

18   are precluded from obtaining a CCW License because they cannot demonstrate the special

19   need to carry concealed weapons.  FAC, ¶ 74.

20      Plaintiffs' fourth claim alleges that California Penal Code section 26150(a)(2)'s

21   "good cause" provision violates the Equal Protection Clause of the Fourteenth Amendment

22   on its face because it "creates a classification of competent and law-abiding adults whose

23   Second Amendment right to bear arms generally in non-sensitive public place is abrogated

24   because they do not have 'good cause' for a Carry License, while those rights of other

25   classes of competent, law-abiding adults are not so infringed."  FAC, ¶ 83.  Plaintiff also

26   alleges that Sheriff Hutchens' policy of enforcing this good cause requirement also violates

27   the Equal Protection Clause of the Fourteenth Amendment.  *See generally,* FAC, ¶¶ 84-86.

28   As explained herein, there is not a likelihood of success on the merits on Plaintiffs' claims

OFFICE OF THE COUNTY COUNSEL
COUNTY OF ORANGE

-20-

1    based upon Equal Protection.

2          The Equal Protection Clause of the Fourteenth Amendment prohibits states from

3    denying "to any person within its jurisdiction the equal protection of the laws." The Equal

4    Protection Clause "is essentially a directive that all persons similarly situated should be

5    treated alike." *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985).

6    To identify the proper classification, both groups must be comprised of similarly situated

7    persons so that the factor motivating the alleged discrimination can be identified. *Thornton*

8    *v. City of Helens*, 425 F.3d 1158, 1166 (9th Cir. 2005). "The goal of identifying a similarly

9    situated class . . . is to isolate the factor allegedly subject to impermissible discrimination."

10   *United States v. Aguilar*, 883 F.2d 662, 706 (9th Cir. 1989) (overruled by statute on other

11   grounds); *see also Freeman v. City of Santa Ana*, 68 F.3d 1180, 1187 (9th Cir. 1996).

12         In the present case, Plaintiffs' allegation of the class of similarly situated individuals

13   would have been properly defined as all law abiding persons who applied to OCSD for a

14   CCW License, regardless of whether they were approved or denied. As the Ninth Circuit

15   noted, however, "[a]n equal protection claim will not lie by 'conflating all persons not

16   injured into a preferred class receiving better treatment' than the plaintiff." *Thornton*, 425

17   F.3d at 1166 (quoting *Joyce v. Mavromatis*, 783 F.2d 56, 57 (6th Cir. 1986).

18         Here, Plaintiffs cannot meet the threshold showing of an equal protection clause since

19   they cannot prove that they are similarly situated to those persons that were granted CCW

20   Licenses, yet are treated differently. They are not in fact similarly situated. As noted by the

21   court in *Peruta*, 758 F.Supp.2d at 1118, where San Diego County had a virtually identical

22   policy to OCSD's CCW Policy here:

23              [T]he policy does not treat similarly situated individuals

24              differently because not all law-abiding citizens are similarly

25              situated, as Plaintiffs contend.  Those who can document

26              circumstances demonstrating "good cause" are situated

27              differently than those who cannot.  Therefore, Defendant's

28              "good cause" policy does not violate equal protection.

-21-

1    Hence, Plaintiffs' claim that both Penal Code section 26150(a)(2) and OCSD's CCW

2    Policy are facially invalid under the Equal Protection Clause is unfounded.  And, as

3    explained below, Plaintiffs' "as applied" is equally unfounded.

4         Even if Plaintiffs were similarly situated and treated differently, requiring

5    documentation showing good cause for self-defense would not violate the Equal Protection

6    Clause.  The Supreme Court has held that because most legislation classifies for one

7    purpose or another, with resulting disadvantage to various groups, the Court will uphold a

8    legislative classification so long as it "neither burdens a fundamental right nor targets a

9    suspect class," and "bears a rational relation to some legitimate end." *Romer v. Evans*, 517

10   U.S. 620, 631 (1996).  As discussed previously, there is no fundamental right to carry a

11   concealed weapon in public.  And there is certainly no evidence that a suspect class had

12   been targeted here.

13        Nevertheless, even assuming *arguendo* that heightened scrutiny is required, the good

14   cause requirement does not violate the Equal Protection Clause under any form of scrutiny.

15   Regardless of the level of constitutional scrutiny, Plaintiffs' as-applied challenge fails.  The

16   governmental interest furthered by Penal Code section 25400 (prohibiting concealed carry

17   weapons subject to exceptions and licensing) and the licensing process set forth in 26150 as

18   administered by the Sheriff – the safety of the public from unknown persons carrying

19   concealed, loaded firearms – is both important and compelling.  *See* Zimring Decl.; Barnes

20   Decl.  In addition, the Penal Code provision and OCSD's CCW Policy are both narrowly

21   tailored and substantially related to furthering public safety.  *See generally* Argument Sec.

22   III.1.c, d. above.  As such, Plaintiffs' as applied challenge fails as well.

23   **C.    Plaintiffs Are Not Likely to Succeed on Claims Against Sheriff Hutchens**

24   **in Her Individual Capacity Because She is Immune from Suit**

25        Qualified immunity shields government officials "from liability for civil damages

26   insofar as their conduct does not violate clearly established statutory or constitutional rights

27   of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231

28   (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  "[W]hether an official

OFFICE OF THE COUNTY COUNSEL
COUNTY OF ORANGE

-22-

1    protected by qualified immunity may be held personally liable for an allegedly unlawful

2    official action generally turns on the 'objective legal reasonableness' of the action."

3    *Anderson v. Creighton*, 483 U.S. 635, 639 (1987) (quoting *Harlow*, 457 U.S. at 819).

4    Applying an objective reasonableness test to the conduct of public officials in determining

5    whether qualified immunity is a defense "'avoids the unfairness of imposing liability on a

6    defendant who 'could not reasonably be expected to anticipate subsequent legal develop-

7    ments, nor...fairly be said to 'know' that the law forbade conduct not previously identified

8    as unlawful.'" *Crawford-El v. Britton*, 523 U.S. 574, 590 (1998) (quoting *Harlow*, 457 U.S.

9    at 818).  Under the objective reasonableness test, "evidence concerning the defendant's

10   subjective intent is simply irrelevant" to the defense of qualified immunity. *Crawford-El*,

11   523 U.S. at 588.

12          The Supreme Court historically mandated a two-part analysis to determine whether

13   qualified immunity protects individual law enforcement officers from liability. *See Saucier*

14   *v. Katz*, 533 U.S. 194 (2001).  The first part of the test was to determine whether the alleged

15   facts showed that the officer's conduct violated a constitutional right. *Id.* at 201.  Then, if a

16   colorable claim for a constitutional violation appeared from the alleged facts, in the second

17   part of the test the court determined whether the constitutional right was clearly established

18   in the particular context of the case. *Id.* at 201-202.  In 2009, the Supreme Court ruled that

19   the first step of the *Saucier* analysis could be omitted at the discretion of the court.  Instead,

20   courts could choose to focus primarily or even solely on the second prong of the analysis.

21   *See Pearson*, 555 U.S. at 236.  In this prong, when an officer is alleged to have acted

22   unconstitutionally, this is determined based on "whether it would be clear to a reasonable

23   officer that his conduct was unlawful in the specific situation he confronted." *Saucier*, 533

24   U.S. at 202.

25          "'Clearly established' for purposes of qualified immunity means that 'the contours of

26   the right must be sufficiently clear that a reasonable official would understand that what he

27   is doing violates that right.'" *Wilson v. Layne*, 526 U.S. 603, 614-615 (1999) (quoting

28   *Anderson*, 483 U.S. at 640.)  "This is not to say that an official action is protected by

OFFICE OF THE COUNTY COUNSEL
COUNTY OF ORANGE

1    qualified immunity unless the very act in question has previously been held unlawful, but it

2    is to say that in the light of pre-existing law the unlawfulness must be apparent." *Hope v.*

3    *Pelzer,* 536 U.S. 730, 739 (2002) (quoting *Anderson*, 483 U.S. at 640) (internal quotation

4    marks and citations omitted).  "Qualified immunity operates to ensure that before they are

5    subjected to suit, officers are on notice that their conduct is unlawful." *Hope*, 536 U.S. at

6    731.  Thus, the "salient question" is whether the state of law gave the deputies fair warning

7    that their actions were unconstitutional.  *See id.* at 741; *see also Devereaux v. Abbey*, 263

8    F.3d 1070, 1075 (9th Cir. 2001) (*en banc*) ("What is required is that government officials

9    have 'fair and clear warning' that their conduct is unlawful.") (Emphasis added; citation

10   omitted).

11        Qualified immunity is "'an immunity from suit rather than a mere defense to

12   liability.'" *Pearson*, 555 U.S. at 231 (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526

13   (1985).)  Based on the Supreme Court precedent prior to *Heller* that there was no individual

14   right to bear arms under the Second Amendment, and given that courts nationwide and in

15   this Circuit are in the midst of identifying the scope of the right to bear arms after *Heller*,

16   and most recently have upheld similar good cause policies in *Peruta* , 758 F.Supp.2d 1106,

17   and *Richards,* 821 F.Supp.2d, Sheriff Hutchens is entitled to qualified immunity from suit.

18   The state of the Second Amendment law on CCW Licenses, and the law on the constitution-

19   ality of the "good cause" standards for these permits, could not have given Sheriff Hutchens

20   fair and clear warning that her actions were unconstitutional.  Thus, qualified immunity

21   applies and Plaintiffs are not likely to prevail on their claims against Sheriff Hutchens in her

22   individual capacity.

23   //

24   //

25   //

26   //

27   //

28   //

OFFICE OF THE COUNTY COUNSEL
COUNTY OF ORANGE

-24-

## IV.   CONCLUSION

Based on the foregoing, Plaintiffs are unlikely to succeed on the merits of any of their claims for relief based on the Second and Fourteenth Amendments.  Defendants respectfully request that the Court deny the Motion for Preliminary Injunction.

DATED:  October 9, 2012                    Respectfully submitted,

NICHOLAS S. CHRISOS, COUNTY COUNSEL
and NICOLE M. WALSH, DEPUTY

By _____
Nicole M. Walsh, Deputy

Attorneys for Defendants, Sheriff Sandra
Hutchens, and Orange County Sheriff-Coroner
Department

OFFICE OF THE COUNTY COUNSEL
COUNTY OF ORANGE

-25-

**CERTIFICATE OF SERVICE**

I do hereby declare that I am a citizen of the United States employed in the County of Orange, over 18 years old and that my business address is 333 W. Santa Ana Blvd., Suite 407, Santa Ana, California 92702-1379, and my email address is marz.lair@coco.ocgov.com. I am not a party to the within action.

I hereby certify that I caused the foregoing **DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** to be served on October 9, 2012, upon all counsel of record listed below by electronic filing utilizing the U.S.D.C.'s CM/ECF:

Carl Dawson Michel, Esq.
Email: cmichel@michellawyers.com
Glenn S McRoberts, Esq.
Email: gmcroberts@michellawyers.com
Sean Anthony Brady, Esq.
Email: sbrady@michellawyers.com
MICHEL & ASSOCIATES PC
180 East Ocean Blvd., Ste. 200
Long Beach, CA 90802
562-216-4444
Fax: 562-216-4445

Attorneys for Plaintiffs, Dorothy McKay, Diana Kilgore, Phillip Willms, Frederick Kogen, David Weiss, and the CRPA Foundation

I declare that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.

Executed in Santa Ana, California this 9th day of October, 2012.

Marzette L. Lair

OFFICE OF THE COUNTY COUNSEL
COUNTY OF ORANGE