1  C. D. Michel – SBN 144258
   Glenn S. McRoberts – SBN 144852
2  Sean A. Brady – SBN 262007
   MICHEL & ASSOCIATES, P.C.
3  180 E. Ocean Blvd., Suite 200
   Long Beach, CA 90802
4  Telephone: (562) 216-4444
   Facsimile: (562) 216-4445
5  cmichel@michellawyers.com
   www.michellawyers.com
6  Attorneys for Plaintiffs

7

8              **IN THE UNITED STATES DISTRICT COURT**

9               **CENTRAL DISTRICT OF CALIFORNIA**

10                   **SOUTHERN DIVISION**

11 DOROTHY McKAY, DIANA              ) **CASE NO.: SACV 12-1458JVS (JPRx)**
   KILGORE, PHILLIP WILLMS,          )
12 FRED KOGEN, DAVID WEISS, and      ) **PLAINTIFFS' REPLY TO**
   THE CRPA FOUNDATION,              ) **DEFENDANTS' OPPOSITION TO**
13                                   ) **MOTION FOR PRELIMINARY**
                                     ) **INJUNCTION**
14              Plaintiffs,          )
                                     )
15                                   ) Date:       October 29, 2012
         v.                          ) Time:       1:30 p.m.
16                                   ) Location:   Ronald Reagan Federal
                                     )             Building
17 SHERIFF SANDRA HUTCHENS,          )             411 West Fourth Street
   individually and in her official )             Room 1053
18 capacity as Sheriff of Orange County, )         Santa Ana, CA 92701
   California, ORANGE COUNTY         )
19 SHERIFF-CORONER                   ) Courtroom: 10C
   DEPARTMENT, COUNTY OF             ) Judge:      James V. Selna
20 ORANGE, CALIFORNIA, and           ) Date Action Filed: September 5, 2012
   DOES 1-10,                        )
21                                   )
                                     )
22              Defendants.          )
                                     )
23 _____  )

24

25

26

27

28

# TABLE OF CONTENTS

**PAGE(S)**

**I.  PLAINTIFFS ASK THIS COURT TO UPHOLD CALIFORNIA LAW BY CONSTRUING ITS "GOOD CAUSE" REQUIREMENT IN A CONSTITUTIONAL MANNER, NOT TO HAVE IT OVERTURNED**................................................ 1

**II.  PLAINTIFFS DO NOT ASSERT THAT THERE IS A RIGHT TO CARRY IN ANY MANNER AS THE SHERIFF SUGGESTS THEY DO**.......................................................... 3

**III.  PLAINTIFFS HAVE ESTABLISHED THAT THEY ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR SECOND AMENDMENT CLAIM**.............................................. 3

   **A.  The *Heller* Court Neither Expressly Nor Implicitly Limited the Second Amendment's Protections to Within the Home; Rather Its Analysis Assumes a Right to Publicly Carry**........ 3

      **1.  The Sheriff's Narrow Interpretation of *Heller* Is Unsupported by the Authority Cited**................. 3

      **2.  *Heller*'s Numerous References to Public Activities that Have Historically Been Protected Under the Right to Arms Belies Sheriff Hutchens' Limited Interpretation of *Heller***................................ 4

      **3.  The Supreme Court's Detailed Analysis and Findings Concerning the Scope of the Right to Arms in Public Places Cannot be Disregarded as Meaningless Dicta**...... 5

      **4.  It Is Not The Prevailing Judicial View that the Second Amendment Is Limited to the Home**................. 6

   **B.  Sheriff Hutchens Neither Rebuts Plaintiffs' Proposed Scope-Based Approach Applies, Nor Argues that her Policy Could Meet that Test**.......................................... 7

   **C.  If the Court Applies Means-End Review, Heightened Scrutiny, Not Rational Basis, Must Apply**........................... 8

# TABLE OF CONTENTS (CONT.)

PAGE(S)

    **1.**    **Tests that Mandate Rational Basis Review Unless Protected Conduct Is "Substantially Burdened" Ignore *Heller* and the Weight of Post-*Heller* Authority**........................................... 8

    **2.**    **Strict Scrutiny Is the Appropriate Standard of Review Because Sheriff Hutchens' Policy Prohibits Core Second Amendment Conduct**.................... 11

        **a.**    ***Heller's* "Presumptively Lawful" Language Does Not Preclude Strict Scrutiny**............. 11

        **b.**    **Sheriff Hutchens Fails to Recognize a Clear Trend Toward Heightened Scrutiny in Second Amendment Jurisprudence**................... 12

    **D.**    **Under Any Heightened Level of Review, Sheriff Hutchens' Policy Violates the Second Amendment**.................... 14

**IV.**    **PLAINTIFFS HAVE ESTABLISHED THAT THEY ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR EQUAL PROTECTION CLAIM.**........................... 15

**V.**    **PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR FACIAL CHALLENGES BECAUSE SHERIFF HUTCHENS' POLICY IS VOID IN ALL APPLICATIONS.**....... 16

**VI.**    **SHERIFF HUTCHENS DOES NOT DISPUTE THAT PLAINTIFFS WILL CONTINUE TO SUFFER IRREPARABLE HARM ABSENT PRELIMINARY INJUNCTION.**.............. 19

**VII.**    **SHERIFF HUTCHENS DOES NOT DISPUTE THAT THE BALANCE OF EQUITIES TIPS IN PLAINTIFFS' FAVOR OR THAT TEMPORARY RELIEF IS IN THE PUBLIC INTEREST.**........................................... 19

**VIII.**    **QUALIFIED IMMUNITY DOES NOT APPLY**................... 19

**CONCLUSION.**........................................... 19

# TABLE OF AUTHORITIES

**PAGE(S)**

## FEDERAL CASES

*Chaplinsky v. New Hampshire*,
 315 U.S. 568 (1942). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   11

*City of L.A. v. Alameda Books, Inc.*,
 535 U.S. 425 (2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   14, 15

*Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council*,
 108 S. Ct. 1392 (1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

*Ezell v. City of Chicago*,
 651 F.3d 684 (7th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . .   8, 10, 12

*GeorgiaCarry.org. v. Georgia*,
 687 F.3d 1244 (11th Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . .   10

*Heller v. District of Columbia*,
 554 U.S. 570 (2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Heller v. District of Columbia*,
 670 F.3d 1244 (D.C. Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . .   10

*Johnson v. California*,
 543 U.S. 499 (2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12

*Kachalsky v. Cacace*,
 817 F. Supp. 2d 235 (S.D. N.Y. 2011). . . . . . . . . . . . . . . . . . . .   7

*Kramer v. Union Free School Dist.*,
 395 U.S. 621 (1969). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   16

*McDonald* v. *City of Chicago*,
 130 S. Ct. at 3036-42 (2010). . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Nordyke v. King*,
 644 F.3d 776 (9th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . .   9, 10

*Nordyke v. King*,
 681 F.3d 1041(2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   9

*Peruta*,
 678 F. Supp. 2d 1051 (No. 09-2371). . . . . . . . . . . . . . . . . . . .   6, 7

*Pearson v. Callahan*,
 129 S. Ct. 808 (2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   19

# TABLE OF AUTHORITIES

**PAGE(S)**

## FEDERAL CASES (CONT.)

*R.A.V. v. City of St. Paul*,
  505 U.S. 377 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12

*Richards v. County of Yolo*,
  821 F. Supp. 2d 1169 (E.D. Cal. 2011) . . . . . . . . . . . . . . . . . . . . . .  6, 17

*Romer v. Evans*,
  517 U.S. 620 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   15

*Seminole Tribe of Fla. v. Florida*,
  517 U.S. 44 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   6

*State of Wisconsin v. Schultz*,
  No. 10-CM-138, slip op. at 5 (Wis. Cir. Oct. 12,2010) . . . . . . . . . . . . . .   15

*Thornton v. City of St. Helens*,
  425 F.3d 1158 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   15

*United States v. Booker*,
  644 F.3d 12 (2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   13

*United States v. Chester*,
  629 F.3d 673 (4th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . .  8, 9, 10, 13

*United States v. DeCastro*,
  682 F.3d 160 (2d Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9, 10

*United States v. Masciandaro*,
  638 F.3d 458 (4th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . .  9, 10, 13

*United States v. Marzzarella*,
  614 F.3d 85 (3d Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . .  8, 9, 10, 13

*United States v. Reese*,
  627 F.3d 792 (10th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8, 10

*United States v. Salerno*,
  481 U.S. 739 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   17

*United States v. Skoien*,
  614 F.3d 638 (7th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   13

*United States v. Vongxay*,
  594 F.3d 1111 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   6

# TABLE OF AUTHORITIES

**PAGE(S)**

**FEDERAL CASES (CONT.)**

*Wash. State Grange v. Wash. State Republican Party*,
    522 U.S. 442 (2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   17, 18

**STATE CASES**

*People v. Yarborough*,
    169 Cal.App4th 303 (2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7

*Schubert v. DeBard*,
    398 N.E.2d 1339 (Ind. Ct. App.1980). . . . . . . . . . . . . . . . . . . . . . . . .   1

# I.   PLAINTIFFS ASK THIS COURT TO UPHOLD CALIFORNIA LAW BY CONSTRUING ITS "GOOD CAUSE" REQUIREMENT IN A CONSTITUTIONAL MANNER, NOT TO HAVE IT OVERTURNED

Sheriff Hutchens repeatedly claims Plaintiffs challenge the constitutionality of her policy *and* California's "good cause" provision. To be clear, Plaintiffs' challenge to California's provision is made only in the alternative, to in the event this Court finds there is no saving construction. Plaintiffs contend there is indeed a saving construction, i.e., that a desire for self-defense satisfies the "good cause" standard, and that the Sheriff's policy applying that standard, by not recognizing self-defense as such, causes Plaintiffs' injury. First Amend. Compl. ¶¶ 57-60.

This approach is consistent with the doctrine of constitutional avoidance, which advises courts to consider "every reasonable construction" "to save a statute from unconstitutionality." *Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council*, 485 U.S. 568, 575, 108 S. Ct. 1392, 99 L. Ed. 2d 645 (1988). In this case, to avoid invalidity of the entire statute, the Court should construe the "good cause" criterion to be satisfied where Carry License applicants assert a desire for "self-defense" as their basis for a license.

This is largely in line with the approach taken in *Schubert v. DeBard*, 398 N.E.2d 1339, 1341 (Ind. Ct. App. 1980), which construed the "proper reason" requirement (virtually identical to "good cause") in Indiana's Carry License issuing scheme in a manner consistent with the right to bear arms as follows:

> [T]he superintendent decided the application on the basis that the statutory reference to "a proper reason" vested in him the power and duty to subjectively evaluate an assignment of "self-defense" as a reason for desiring a license and the ability to grant or deny the license upon the basis of whether the applicant "needed" to defend himself.
>
> Such an approach contravenes the essential nature of the constitutional guarantee. It would supplant a right with a mere administrative privilege which might be withheld simply on the basis that such matters as the use of firearms are better left to the organized military and police forces even where defense of the individual citizen is involved.

Ultimately, the court upheld Indiana's licensing statute, confirming that "[e]stablishing such a licensing procedure for handguns is not violative of the right

1  to bear arms" guaranteed by the United States and Indiana constitutions. *Id.* at

2  1340. But the court held the license could not be denied if, all other conditions

3  being met, the applicant cited self-defense as his "proper reason." *Id.* at 1341.

4  **II.   PLAINTIFFS DO NOT ASSERT THAT THERE IS A RIGHT TO CARRY IN ANY MANNER AS THE SHERIFF SUGGESTS THEY DO**

5       Contrary to Sheriff Hutchens' assertions, Plaintiffs do not claim there is a

6  right to carry a firearm in *any* particular manner, let alone *concealed*. In fact, *Heller*

7  strongly suggests there is not. 554 U.S. 570, 626, 128 S. Ct. 2783, 171 L. Ed. 2d

8  637 (2008). Rather, Plaintiffs contend that the Second Amendment protects a

9  fundamental right to publicly carry a firearm for self-defense in *some* manner.

10       To a degree, the legislature can constitutionally dictate that manner. In

11  California, the legislative preference is for licensed, concealed (rather than open)

12  carry within populous locales like Orange County. Pls.' Mem. Supp. Mot. Prelim.

13  Inj. ("Pls.' Mot.") 1:26-2:1. Plaintiffs do not contest California's policy choice in

14  requiring licenses to carry a handgun, and that it be carried concealed, as the only

15  lawful manner to go about armed in public. But given that policy, Plaintiffs contend

16  that they, and all law-abiding, competent adults, cannot be denied such a license

17  simply because they cannot prove a *special* need to carry, beyond a general desire

18  for self-defense – a *special* need that Sheriff Hutchens finds acceptable.

19       This is consistent with *Heller*'s detailed discussion regarding the historical

20  acceptance of some restrictions on the right to arms, which, as Plaintiffs explain in

21  their motion, makes clear that government may prohibit *some* manner of carrying

22  arms (e.g., concealed), as long as some alternative manner is available. Pls.' Mot.

23  11:18-12:21. Sheriff Hutchens ignores this aspect of the public-carry cases cited in

24  the *Heller* decision and leaves Plaintiffs' analysis of those cases unrebutted.

25  / / /

26  / / /

27  / / /

28  / / /

PLAINTIFFS' REPLY TO OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

## III.   PLAINTIFFS HAVE ESTABLISHED THAT THEY ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR SECOND AMENDMENT CLAIM

### A.   The *Heller* Court Neither Expressly Nor Implicitly Limited the Second Amendment's Protections to Within the Home; Rather Its Analysis Assumes a Right to Publicly Carry

Sheriff Hutchens claims that both the *Heller* and *McDonald* Courts "went to great lengths to explain that the scope of *Heller* extends only to the right to keep a firearm in the *home* for self-defense." Defs.' Opp'n Pls.' Mot. Prelim. Inj. ("Defs.' Opp'n") 9:15-18. But, neither Sheriff Hutchens' selected quotes from *Heller* and *McDonald*, nor the case law she relies upon support that proposition. Rather, they support Plaintiffs' view that there is a right to publicly carry firearms – not in "any manner whatsoever," but certainly in *some* manner.

#### 1.   The Sheriff's Narrow Interpretation of *Heller* Is Unsupported by the Authority Cited

In support of her claim that *Heller* confines Second Amendment rights to the home, Sheriff Hutchens first quotes *Heller*'s unremarkable observation that the right to arms is "not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." Defs.' Opp'n 8:21-24 (quoting *Heller*, 554 U.S. at 626). But Plaintiffs make no such claims. Obviously, there are limits on all rights. The First Amendment, for example, does not protect a right to say anything, anywhere, for whatever purpose. Rather, the Court's observation does little more than confirm there are exceptions to general rules, that all rights – even fundamental rights – are subject to some regulation. This observation does not even rise to the level of dicta, nor does is it undermine Plaintiffs' assertion that there is indeed a public right to carry *some* weapons, in *some* manner, for *some* purposes.

The Sheriff then cites to *Heller*'s observation that the majority of 19th-century courts upheld concealed carry prohibitions as lawful. Defs.' Opp'n 9:2-5. But she provides no analysis explaining why prohibitions on *concealed* carry being lawful translates into the Second Amendment not protecting *any* form of carry, and she completely ignores Plaintiffs' extensive analysis of *Heller*'s treatment of

certain 19th-century cases (and other authority) showing such concealed carry bans were only permitted when open carry was allowed. *See* Pls.' Mot. 11:18 -12:15.

Finally, Sheriff Hutchens cites to the *McDonald* Court's description of the holding in *Heller* "that the Second Amendment protects a right to keep and bear arms for lawful purposes, *most notably* for self-defense within the home." Defs.' Opp'n 9:18-21 (quoting *McDonald v. City of Chicago*, 561 U.S. 3025, 130 S. Ct. 3020, 3044, 177 L. Ed. 2d 894 (2010) (emphasis added)). Yet again, the Sheriff fails to provide any analysis explaining how this quote supports her assertion that the Supreme Court "went to great lengths" to limit the Second Amendment to the home; likely because it does not. Saying the right is "most notable" in the home is far from saying it is exclusive to the home – in fact, it implies just the opposite.

**2.    *Heller*'s Numerous References to Public Activities that Have Historically Been Protected Under the Right to Arms Belies Sheriff Hutchens' Limited Interpretation of *Heller***

In analyzing the historical scope of the right to arms, the *Heller* Court made repeated references to the right in public contexts. *See e.g.*, *Heller*, 554 U.S. at 594 ("by the time of the founding [, the right was] understood to be an individual right protecting against both *public* and private violence" (emphasis added); *id*. at 599 ("[t]he prefatory clause does not suggest that preserving the militia was the only reason Americans valued the ancient right; most undoubtedly thought it even more important for self-defense and hunting"); *id*. at 619 ("[n]o doubt, a citizen who keeps a gun or pistol under judicious precautions, *practices in safe places the use of it*, and in due time teaches his sons to do the same, exercises his individual right [to bear arms]") (citation omitted) (emphasis added). Hunting and target practice are hardly activities associated with inside the home.

When viewed in this context, Sheriff Hutchens' assertion that the *Heller* Court went to "great lengths" to limit the right to within the home is simply not a serious notion. It also begs the question of why the Court did not *expressly* limit the right to the home if it intended to do so. Surely, it had to foresee that the question

of public carry would arise when it decided to describe the Second Amendment right as "the individual right to possess and carry weapons in case of confrontation." *Heller*, 554 U.S. at 592. Yet, the Court chose not to limit its description of the right to "confrontation within the home."

### 3. The Supreme Court's Detailed Analysis and Findings Concerning the Scope of the Right to Arms in Public Places Cannot be Disregarded as Meaningless Dicta

Sheriff Hutchens conveniently ignores most of the *Heller* Court's extensive discussion concerning the nature of the right to arms outside the home described above, and insists that "the Court in *Heller* did not hold the right to 'bear' as anything more than the right to defend 'hearth and home.'" Defs.' Opp'n 11. In doing so, the Sheriff conflates the Second Amendment *right* defined in *Heller* with the ultimate *application* of the right to the narrow facts of that case, asserting that the narrow holding – as opposed to the detailed analysis and findings – defines the scope of the fundamental right to arms.

The Sheriff seems to suggest this narrow view of *Heller* is required since, in her view, *Heller*'s detailed analysis and findings about the right outside the home were beyond the boundaries of the question before the Court, i.e, dicta. *See* Defs.' Opp'n 9:24-10:5. But this view ignores the fact that, because *Heller* was the Supreme Court's first substantial consideration of the Second Amendment, the Court was required to outline the nature and scope of the rights protected by that amendment before it could analyze the specific laws being challenged.

As such, the Court's detailed explanation of the historical understanding of the rights protected under the Second Amendment, which, as explained above and in Plaintiffs' motion, includes repeated references to the public role of the right to arms, was not dicta, but rather a necessary analytical step in clarifying the nature of that right. Specifically, the Court had to address, and ultimately refute, the District of Columbia's collectivist interpretation of "bear arms" in order to reach its holding.

And, it is well established that:

> When an opinion issues for the Court, it is not only the result but also those portions of the opinion necessary to that result by which we are bound . . . the principle of *stare decisis* directs us to adhere not only to the holdings of our prior cases, but also to their explications of the governing rules of law . . . .

*Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 67, 116 S. Ct. 1114, 134 L. Ed. 2d 252 (1996) (citations and internal marks omitted). Moreover, "[e]ven if it could be considered a dictum, however, that would be of little significance because [Ninth Circuit] precedent requires that we give great weight to dicta of the Supreme Court." *Coeur D'Alene Tribe of Idaho v. Hammond*, 384 F.3d 683 (9th Cir. 2004).

Plaintiffs contend that the historical understanding of the right to bear arms offered by the Supreme Court in *Heller* recognizing a right to carry arms in public *in some manner*, at minimum comports with the Second Amendment's original public meaning, if such is not already binding as a matter of *stare decisis*. Either way, it supports Plaintiffs' claims.

### 4.    It Is Not The Prevailing Judicial View that the Second Amendment Is Limited to the Home

In her discussion concerning how courts have addressed the scope of the Second Amendment, the Sheriff misses crucial points. *United States v. Vongxay*, 594 F.3d 1111, 1113 (2010), involved a Second Amendment challenge to a conviction for felon in possession of a firearm. In upholding that conviction, the Ninth Circuit noted that "the Supreme Court has purposefully differentiated the right to bear arms generally from the more limited right held by felons." *Id.* at 1118 (citations omitted). Here, Plaintiffs seek to vindicate the rights of law-abiding adults.

Sheriff Hutchens merely reiterates the holdings of *Peruta v. County of San Deigo*, 758 F. Supp. 2d 1106 (S.D. Cal. 2010), and *Richards v. County of Yolo*, 821 F. Supp. 2d 1169 (E.D. Cal. 2011), and ignores Plaintiffs' criticisms of those cases.

*See* Defs.' Opp'n 10:6-21; *but see* Pls.' Mot. 11:3-14:10.[1] She also fails to mention that the *Peruta* court stated "*Heller* does not preclude Second Amendment challenges to laws regulating firearm possession outside of home." *Peruta v. San Diego*, 678 F. Supp. 2d 1046, 1051 (S.D. Cal. 2010).

Further, all of the California state cases the Sheriff cites are irrelevant here, as they review challenges to restrictions on *unlicensed* concealed carry. *See e.g., People v. Yarborough*, 169 Cal. App. 4th 303, 314 (stating "in the aftermath of *Heller* the prohibition 'on the carrying of a concealed weapon *without a permit*' " continues to be lawful) (emphasis added)). Plaintiffs do not dispute this.

Finally, upon reading the Sheriff's description of the district court cases Plaintiffs cite in their motion as having a proper view of the right to bear arms, one would think they stand for the proposition that the right is limited to the home; but nothing could be further from reality. *See* Defs.' Opp'n 11:13-12:24; *but see* Pls.' Mot. 13:10-14:1.

**B.    Sheriff Hutchens Neither Rebuts Plaintiffs' Proposed Scope-Based Approach Applies, Nor Argues that her Policy Could Meet that Test**

As Plaintiffs explain in detail in their Motion, *Heller* advances a scope-based analytical approach that determines first whether the law restricts activity within the scope of the right as originally understood, and second whether it is similar or analogous to restrictions historically understood as  permissible limits on the right to bear arms, i.e., whether there is "historical justification for those regulations." *See Heller*, 554 U.S. at 634-35; Oral Arg. at 44, *Heller*, 554 U.S. 570 (No. 07-290). Sheriff Hutchens' opposition wholly ignores this framework and Plaintiffs' application of it. Instead, she introduces a breed of means-end analysis that necessarily requires the Court to evaluate "the costs and benefits of firearms

---

[1] *Kachalsky v. Cacace*, 817 F. Supp. 2d 235 (S.D. N.Y. 2011), is flawed for the same reasons.

restrictions" and to make "difficult empirical judgments" about the efficacy of particular gun regulations." *See McDonald*, 130 S. Ct. at 3050. This is an approach, as Plaintiffs point out, both the *Heller* and *McDonald* Courts explicitly reject. Pls.' Mot. 4:26-7:2. And this Court should reject the invitation to apply it here.

Under the scope-based approach advanced by Plaintiffs, Sheriff Hutchens bears the burden of establishing that her policy for issuing Carry Licenses, which bars the majority of law-abiding citizens from exercising the right to carry firearms for self-defense outside the home, is supported by the history and traditions of this country. Sheriff Hutchens provides *no* evidence at all that her policy can meet this test, nor does she attempt to rebut the weight of evidence presented by Plaintiffs establishing that her policy does *not* find support in history or tradition.

If the Court applies the *Heller* scope-based approach, Sheriff Hutchens has not carried her burden, and Plaintiffs are likely to succeed on the merits.

## C. If the Court Applies Means-End Review, Heightened Scrutiny, Not Rational Basis, Must Apply

### 1. Tests that Mandate Rational Basis Review Unless Protected Conduct Is "Substantially Burdened" Ignore *Heller* and the Weight of Post-*Heller* Authority

The Supreme Court has described the right of the people to keep and bear arms for self-defense as fundamental. *McDonald*, 130 S. Ct. at 3036-42. As with other fundamental rights, the explicit nature of the right precludes application of rational-basis review. Whatever else *Heller* left for future courts to decide, it is explicitly clear on at least this point. *Heller*, 554 U.S. at 628 n.27. As such, law that make it more difficult to use or possess arms for self-defense (and especially those like the Sheriff's policy that effectively ban that right) burden the Second Amendment right, and *requires* some form of heightened scrutiny. *See, e.g., Ezell v. City of Chicago*, 651 F.3d 684, 701 (7th Cir. 2011); *United States v. Chester*, 628 F.3d 673, 680 (4th Cir. 2010); *United States v. Reese*, 627 F.3d 792, 800-01 (10th Cir. 2010); *United States v. Marzzarella*, 614 F.3d 85, 89 (3d Cir. 2010).

1   Meaningful judicial review cannot be avoided simply by calling the restriction a
2   minor inconvenience – or not quite "substantial" enough.

3       Sheriff Hutchens ignores *Heller's* clear direction on this point and urges the
4   Court to apply rational basis review, arguing that "*numerous* federal circuit courts
5   have determined that *only* regulations that substantially burden the core right to
6   keep and bear arms trigger heightened scrutiny." Defs.' Opp'n 13:28-14:6 (citing
7   *Nordyke v. King*, 644 F.3d 776, 786 (9th Cir. 2011), *vacated following rehearing
8   en banc by* 681 F.3d 1041 (2012) (emphasis added)). The Sheriff is mistaken.

9       In fact, this "substantial burden" analysis has been strictly followed only by
10  the Second Circuit in *United States v. DeCastro*, 682 F.3d 160 (2d Cir. 2012), and
11  to a lesser extent, by the Ninth Circuit in the vacated *Nordyke* case. Contrary to the
12  Sheriff's claims, no other circuit court imposes a "substantial burden" threshold
13  just to trigger heightened scrutiny. Defs.' Opp'n 14:12-19 (citing *United States v.
14  Masciandaro*, 638 F.3d 458, 470-71 (4th Cir. 2011); *Chester*, 629 F.3d at 680-83;
15  *Marzzarella*, 614 F.3d at 89). Instead, each considers the burden imposed only in
16  determining *which level of heightened scrutiny* – strict or intermediate – applies.[2]

17      Further, insofar as *DeCastro* and *Nordyke* held that heightened scrutiny is
18  appropriate *only* as to those regulations that *substantially* burden the Second
19  Amendment, those holdings should be disregarded by the Court. *DeCastro*, 682
20  F.3d at 164; *Nordyke*, 644 F.3d at 786. Under the "substantial burden" analysis,
21  rational basis review is the default standard, disregarded only if the challenger can
22  establish that the law imposes an adequately serious burden on protected conduct.
23  That result flies in the face of *Heller*, *McDonald*, and the great majority of post-
24  *Heller* circuit court opinions. *Heller*, 554 U.S. at 628 n.27; *McDonald*, 130 U.S. at

25  _____

26      [2]  Indeed, recognizing that *Heller* ruled out rational basis review, these courts all
27  applied some form of heightened scrutiny – even where they ultimately found those
    laws did not or might not burden core protected conduct. *Masciandaro*, 638 F.3d at
28  469, 471; *Chester*, 629 F.3d at 680, 682-83; *Marzzarella*, 613 F.3d at 95-97.

1   3036-42; *see also GeorgiaCarry.org. v. Georgia*, 687 F.3d 1244, 1260 n.34 (11th

2   Cir. 2012); *Heller v. District of Columbia*, 670 F.3d 1244, 1252 (D.C. Cir. 2011)

3   ("*Heller II*"); *Ezell*, 651 F.3d at 706; *Masciandaro*, 638 F.3d at 469, 471; *Chester*,

4   628 F.3d at 680; *Reese*, 627 F.3d at 800-01; *Marzzarella*, 614 F.3d at 94-95.

5   *DeCastro* and *Nordyke* introduce a threshold requirement that appears nowhere in

6   either the *Heller* or *McDonald* opinions. *Heller* plainly states rational basis alone

7   cannot sufficiently justify laws regulating conduct protected by the Second

8   Amendment. 554 U.S. at 628 n.27. The Court made this pronouncement without

9   reference to the severity of the burden imposed. *Id.* It is simply untenable to

10   conclude that *Heller* authorizes an approach that invokes heightened review only

11   when a substantial burden on the right is found.

12          And the majority of other circuits to have decided the issue apply some level

13   of heightened scrutiny to all regulations burdening activity within the scope of the

14   Second Amendment, regardless of the severity of that burden. *See, e.g.*,

15   *GeorgiaCarry.org. v. Georgia*, 687 F.3d at 1260 n.34; *Heller II*, 670 F.3d at 1252;

16   *Ezell*, 651 F.3d at 706; *Chester*, 628 F.3d at 680; *Reese*, 627 F.3d at 800-01;

17   *Marzzarella*, 614 F.3d at 94-95. Under this approach, the only threshold question is

18   whether the challenged law burdens activity that falls within the scope of the right

19   – a question that is answered by resort to text, history, and tradition. *See, e.g.*, *Ezell*,

20   651 F.3d at 701-03. If the regulation targets Second Amendment protected conduct,

21   then heightened scrutiny is mandated. *Id.* at 703. This analysis differs critically

22   from the Sheriff's "substantial burden" test, which focuses on the magnitude of the

23   burden imposed rather than the nature of the conduct regulated.

24          Thus, even if the Court rejects the *Heller* scope-based approach, it should

25   decline the Sheriff's invitation to adopt her misguided "substantial burden" test.

26   But since the Sheriff's policy imposes a high burden, in fact a ban, on conduct

27   protected by the Second Amendment, adoption of this test would mean that

28

Plaintiffs prevail or, at least, that review under the appropriate level of heightened scrutiny is required.

### 2.   Strict Scrutiny Is the Appropriate Standard of Review Because Sheriff Hutchens' Policy Prohibits Core Second Amendment Conduct

Because self-defense is the "central component" of the Second Amendment right, *McDonald*, 130 S. Ct. at 3036 (quoting *Heller*, 554 U.S. at 599), the County's policy of denying permits to Plaintiffs and others seeking to exercise the right to bear arms for that very purpose must be reviewed under a strict scrutiny standard. As Plaintiffs' moving papers explain, *Heller* and *McDonald* together make clear that strict scrutiny applies. Pls.' Mot. 14:11-16:18. And *McDonald* emphatically rejects the argument that Second Amendment rights are somehow less fundamental than other enumerated, individual rights and can be given second-class treatment. *See* 130 S. Ct. at 3042. There is no legitimate basis to depart from the rule that restrictions on core areas of fundamental rights require strict scrutiny. And the Supreme Court has left no doubt that bearing arms for self-defense purposes is core conduct. *McDonald*, 130 S. Ct. at 3036 (quoting *Heller*, 554 U.S. at 599).

### a.   *Heller's* "Presumptively Lawful" Language Does Not Preclude Strict Scrutiny

Ignoring the points raised in Plaintiffs' motion, Sheriff Hutchens instead suggests that *Heller's* list of "presumptively lawful" regulatory measures serves as the Court's implicit rejection of strict scrutiny judicial review. Defs.' Opp'n 18:17-19 (*quoting Heller*, 554 U.S. at 626-27, n.26). Such a reading of the Supreme Court's "presumptively lawful" language makes little sense.

In its recent Second Amendment cases, the Supreme Court frequently cites the First Amendment as a helpful analog. *See Heller*, 554 U.S. at 635; *see also McDonald*, 130 S. Ct. at 3040, 3050. And, notably, the First Amendment coexists with several unprotected categories of speech – restrictions on which can be viewed as "presumptively lawful. For example, the freedom of speech has long been understood to exclude obscenity, fighting words, and defamation. *See Chaplinsky v.*

*New Hampshire*, 315 U.S. 568, 571-72, 62 S. Ct. 766, 86 L. Ed. 1031 (1942). That regulations on those narrow categories of speech have not been "thought to raise any Constitutional problem," *id.* at 572, has no effect on the standard of review applied to laws regulating core conduct protected by the First Amendment, i.e., strict scrutiny. Similarly, even if the Court's "presumptively lawful" language is read as a list of exceptions to the Second Amendment, it says little, if anything, about the level of scrutiny that must be applied to laws that regulate conduct within the core right of law-abiding citizens to keep and bear arms for self-defense.

Further, the "presumptively lawful" language could also reasonably be read as a predictive judgment about which regulations are subject to, but likely to survive, strict scrutiny. A State likely has a compelling interest in prohibiting firearm possession by violent felons and the insane, as it may in keeping private firearms out of certain truly "sensitive" places. It is thus of no great significance that *Heller* suggested that, in future cases, the government might easily prove that laws prohibiting firearm possession by convicted felons or possession in sensitive places satisfy strict scrutiny. Because "[t]he fact that strict scrutiny applies 'says nothing about the ultimate validity of any particular law,' " predicting that such restrictions will be upheld is in no way inconsistent with requiring strict scrutiny. *Johnson v. California*, 543 U.S. 499, 515, 125 S. Ct. 1141, 160 L. Ed. 2d 949 (2005) (citation omitted); *see also R.A.V. v. City of St. Paul*, 505 U.S. 377, 390 n.6, (1992) (stating in First Amendment context that "presumptive invalidity does not mean invariable invalidity"). This Court need not read more into the "presumptively lawful" verbiage than that.

### b. Sheriff Hutchens Fails to Recognize a Clear Trend Toward Heightened Scrutiny in Second Amendment Jurisprudence

Sheriff Hutchens incorrectly claims that strict scrutiny is inappropriate because "there is no trend toward *any* heightened level of scrutiny" "[w]here regulations do not affect the possession of firearms in the home." Defs.' Opp'n

19:2-4 (emphasis added). To the contrary, nearly all circuits to decide the issue have applied some form of heightened scrutiny *whenever* conduct within the scope of the Second Amendment is regulated – even when that conduct occurs outside the home, is engaged in by prohibited persons, or involves some defect not present here. *See, e.g.*, *Ezell*, 651 F.3d at 706 (applying "not quite" strict scrutiny to ban on public firing ranges); *United States v. Booker*, 644 F.3d 12, 25 (1st Cir. 2011) (applying intermediate scrutiny to law prohibiting firearm possession by domestic violence misdemeanant); *Masciandaro*, 638 F.3d at 469 (applying intermediate scrutiny to law prohibiting possession of loaded firearm in national park); *Chester*, 628 F.3d at 680 (applying intermediate scrutiny to prohibition on firearms possession by persons restrained by domestic violence restraining order); *Reese*, 627 F.3d at 802  (same); *Marzzarella*, 614 F.3d at 94-95 (applying intermediate scrutiny to prohibition on unmarked firearms).

That these cases have not applied strict scrutiny in those contexts does not cast doubt on the propriety of strict scrutiny in the case at bar. Plaintiffs maintain that most circuits that have passed on the issue, have determined the applicable standard of review based on whether or not the law challenged regulates "core conduct." *See Booker*, 644 F.3d at 25 n.17; *Chester*, 628 F.3d at 680, 682-83; *Reese*, 627 F.3d 792; *United States v. Skoien*, 614 F.3d 638, 641-42 (7th Cir. 2010). To the extent these courts hinted that they might also consider the severity of the burden on Second Amendment conduct, they did not yet have occasion to. Instead, each case involved conduct the reviewing court determined to be outside the core of the right, prompting the application of intermediate scrutiny. The implication is that restrictions that do implicate the core right of law-abiding citizens to keep and bear arms for self-defense require the most exacting review – strict scrutiny is that test. As described above, that the right is exercised outside the home in the present case does not make the conduct any less "core" to the Second Amendment, nor does it diminish the level of judicial scrutiny that should be applied.

### D. Under Any Heightened Level of Review, Sheriff Hutchens' Policy Violates the Second Amendment

Sheriff Hutchens repeatedly asserts (without explaining why) that carrying outside the home is not "core" conduct. Defs.' Opp'n 14:20-22. While Plaintiffs disagree with that assessment, it is without much consequence because, as explained above, conduct protected under the Second Amendment need not be "core" in order to deserve heightened scrutiny. And, regardless of what heightened standard of review applies, the Sheriff has not met and cannot meet her burden.

In effect, the Sheriff's policy is a ban on the exercise of the right to bear arms for most law-abiding adults, including Plaintiffs. As such, this Court need not even decide the proper standard of review here because, as in *Heller*, the policy clearly could not pass muster under any heightened standard.

Even under the relatively relaxed scrutiny applied to indirect impositions on *less protected* speech, the Supreme Court has emphasized that "a municipality's evidence must fairly support the municipality's rationale for its ordinance" and the municipality cannot "get away with shoddy data or reasoning," *City of Los Angeles. v. Alameda Books, Inc.*, 535 U.S. 425, 438, 122 S. Ct. 1728, 152 L. Ed. 2d 670 (2002). While the Sheriff raises the admittedly compelling state interests of "public safety" and "preventing crime" as the general interests she seeks to further with her special needs "good cause" policy, Defs.' Opp'n 16:24-27, she does not and cannot offer any data or evidence connecting increased public danger or crime to people who carry firearms *pursuant to valid licenses*.

Instead of offering evidence making that connection, the Sheriff asserts mere platitudes about the evils of concealed weapons, relying on the declaration of Frank Zimmering. But that firearms are sometimes misused by criminals says nothing about how *Carry License holders* are connected to those evils. The Sheriff provides no evidence of licensees affecting public safety from the scores of states and California counties where licenses are issued liberally, because she cannot. In describing the proliferation of liberal carry laws in other states, at least one court

1  explained, "there have been no shootouts in town squares, no mass vigilante

2  shootings or other violent outbreaks attributable to allowed concealed carry." *State*

3  *of Wisconsin v. Schultz*, No. 10-CM-138, slip op. at 5 (Wis. Cir. Oct. 12, 2010).

4  Nor can the Sheriff explain how requiring people to show a special need for

5  a license, such as a specific threat, furthers her interest in reducing crime or

6  accidents. Are people with specific threats against them somehow less prone to

7  violence or carelessness than those who are not? The Sheriff's rationalizations are

8  precisely the type of shoddy reasoning based on irrelevant evidence that the

9  Supreme Court in *Alameda Books* warned Courts not to fall for.

10  For these reasons, the Sheriff's policy cannot pass muster under any

11  heightened scrutiny, and Plaintiffs are therefore likely to succeed on the merits of

12  their Second Amendment claims.

13  **IV.   PLAINTIFFS HAVE ESTABLISHED THAT THEY ARE LIKELY TO
        SUCCEED ON THE MERITS OF THEIR EQUAL PROTECTION
14      CLAIM**

15  Sheriff Hutchens correctly notes that courts should generally uphold a

16  legislative classification so long as it "neither burdens a fundamental right nor

17  targets a suspect class." Defs.' Opp'n 22:6-10 (citing *Romer v. Evans*, 517 U.S.

18  620, 631, 116 S. Ct. 1620, 134 L. Ed. 2d 855 (1996)). However, she incorrectly

19  relies on *Thornton v. City of St. Helens*, 425 F.3d 1158 (9th Cir. 2005), for the

20  proposition that Plaintiffs must (and cannot) prove that they are similarly situated

21  to persons with a specific threat against them who qualify for a carry under the

22  Sheriff's policy. *See* Defs.' Opp'n 21:21:6-20.

23  The plaintiffs in *Thornton* brought an equal protection challenge against a

24  city, alleging it conspired to deny them a business permit because one plaintiff was

25  a Native American. In ruling for the city, the court explained that the plaintiffs had

26  not offered any evidence of racial discrimination. *Thornton*, 42 F.3d at 1167. So,

27  *Thornton* requires one alleging discrimination based on membership in a suspect

28  class to prove that was indeed the basis in order to prevail under equal protection.

Contrary to a claim involving a suspect class, a claim that a law violates equal protection because it burdens a fundamental right does not require the Court to determine whether any two classes are "similarly situated." *See Kramer v. Union Free School Dist.*, 395 U.S. 621, 628-29, 89 S. Ct. 1886, 23 L. Ed. 2d 583 (1969). In *Kramer*, the Supreme Court struck down a law limiting the right to vote in school district elections to property owners and parents of school children, finding the classification failed to survive strict scrutiny. *Id.* at 626-29. The court explained, where fundamental rights are concerned, the issue is not whether the legislative judgment and resulting classification had some basis, but whether the distinctions "do in fact sufficiently further a compelling state interest to justify denying the franchise to appellant and members of his class." *Id.* at 633.

The question thus before the Court here is not whether those Carry License applicants who can prove a specific threat against them and those who cannot are "similarly situated" – indeed, all law-abiding adults are similarly situated in their worthiness to exercise fundamental rights – but rather whether the factor that is the basis for classifying them differently in their treatment (in this case, a specific threat) survives the appropriate level of judicial review.

As pointed out in Plaintiffs' motion, strict scrutiny is the appropriate standard in reviewing classifications affecting fundamental rights. Pls.' Mot. 14:11-16 (citing *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 54, 100 S. Ct. 948, 74 L. Ed. 2d 794 (1983)). Sheriff Hutchens provides no argument that her Policy distinguishing between those who can prove a specific threat against them and those who cannot meets that standard. Thus, Sheriff Hutchens' policy violates the Equal Protection Clause on its face and as applied to Plaintiffs.

**V.   PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR FACIAL CHALLENGES BECAUSE SHERIFF HUTCHENS' POLICY IS VOID IN ALL APPLICATIONS**

Plaintiffs recognize that striking a regulation on its face is "strong medicine," and that a party must establish that the challenged law is either "unconstitutional in

1    all of its applications" or in a "substantial number" of its applications to justify

2    such a remedy. *Wash. State Grange v. Wash. State Republican Party*, 522 U.S. 442,

3    449 & n.6, 128 S. Ct. 1184, 170 L. Ed. 2d 151 (2008) (quoting *United States v.*

4    *Salerno*, 481 U.S. 739, 745, 107 S. Ct. 2095, 95 L. Ed. 2d 697 (1987)). Plaintiffs

5    are likely to prevail under either standard.

6         Sheriff Hutchens relies on *Richards*, 821 F. Supp. 2d at 1176, claiming that

7    "this Court should not invalidate the 'good cause' portions of the Penal Code or the

8    OCSD's CCW Policy unless Plaintiffs can 'demonstrate that there are zero

9    circumstances under which [the Sheriff] could clearly issue a concealed weapons

10   permit to someone who demonstrates good cause under the terms of the policy."

11   Defs.' Opp'n 19:21-25. Respectfully, the *Richards* construction of the "void-in-all-

12   applications" standard is nonsensical.

13        The question is not whether no one could ever meet the heightened "good

14   cause" standard Sheriff Hutchens imposes, rather the Court must consider whether

15   Sheriff Hutchens can ever constitutionally impose such a standard. Plaintiffs assert

16   that, *under no circumstance*, is Sheriff Hutchens' policy valid because, *under no*

17   *circumstance*, is she permitted to be the final arbiter of what constitutes a "good

18   enough" reason for a law-abiding citizen to exercise his or her individual right to

19   bear arms for self-defense. Under *all circumstances*, simply requiring "good cause"

20   beyond self-defense is unconstitutional – regardless of whether there is one or there

21   are hundreds of people that might meet it.

22        Further, the Sheriff recognizes that a more relaxed standard for facial

23   challenges exists in the First Amendment and abortion contexts whereby a facial

24   challenge will stand when a "substantial number" of the challenged law's

25   applications are invalid (i.e., overbreadth). However, she fails to explain why, if the

26   Second Amendment is to be afforded the same protection as the First as the

27   Supreme Court has directed, *Heller*, 554 U.S. at 634-35, the overbreadth doctrine

28   should not apply to the present case. *See* Defs.' Opp'n 19:15-20. Plaintiffs assert

that overbreadth must apply and that, under that standard, Sheriff Hutchens' policy must fail on its face.

Following the Sheriff's logic, no gun law, even the most extreme prohibition, could ever be struck on its face because there will always be at least one person who cannot legally possess firearms and to whom the law would be validly applied. Clearly, this cannot be the result. *Heller* itself confirms this. There, even though the Court acknowledged that some individuals could lawfully be denied functional firearms, e.g., convicted felons, it struck down several generally applicable firearm regulations on their face. 554 U.S at 626-27. The Court even recognized that Mr. Heller himself might not be entitled to the necessary handgun permit. *Id.* at 635.Without resort to the overbreadth doctrine, the Court would have had to uphold the law because it recognized that at least one valid application likely exists. Because it did not, it is clear the Court was focused on the laws' invalidity in the "substantial number" of applications.

Similarly, Sheriffs' policy acts as a complete prohibition on the right of the majority of law-abiding citizens to exercise the right to carry firearms for self-defense outside the home. That several individuals might meet the strict standard of "good cause" Sheriff Hutchens imposes cannot save the policy from facial invalidity where a "substantial number" of its applications, in fact the vast majority, are unconstitutional. *See Wash. State Grange*, 552 U.S. at 449 n.6.

Based on the foregoing, Plaintiffs are likely to succeed on the merits of their facial claims because the Sheriff's policy is void in all applications and in a substantial number of its applications. But regardless, Plaintiffs bring an "as applied" challenge, and there is no question the challenged policy has been unconstitutionally applied against them.

/ / /

/ / /

/ / /

1
2

## VI.    SHERIFF HUTCHENS DOES NOT DISPUTE THAT PLAINTIFFS WILL CONTINUE TO SUFFER IRREPARABLE HARM ABSENT PRELIMINARY INJUNCTION

3    Plaintiffs' moving papers note that it is well-settled law that a deprivation of

4   a constitutional right amounts to irreparable harm, and the Courts have specifically

5   held so in the context of alleged deprivations of Second Amendment rights.  Pls.'

6   Mot. 22:24-23:12. Sheriff Hutchens makes no attempt to dispute Plaintiffs'

7   irreparable harm allegations. Accordingly, should Plaintiffs establish a likelihood

8   of success on the merits here, irreparable harm should be presumed.

9

## VII.   SHERIFF HUTCHENS DOES NOT DISPUTE THAT THE BALANCE OF EQUITIES TIPS IN PLAINTIFFS' FAVOR OR THAT TEMPORARY RELIEF IS IN THE PUBLIC INTEREST

10

11    Sheriff Hutchens does not dispute Plaintiffs' contention that she can point to

12   no cognizable harm that would result if her policy were enjoined. Pls.' Mot.

13   23:26-24:2. In fact, nowhere in the twenty-five page opposition do the Sheriff

14   argue that she would be harmed if an injunction were issued. Any conceivable harm

15   that might befall her did not even warrant comment. In any event, any such harm

16   would be heavily outweighed by the ongoing deprivation of both Plaintiffs' and the

17   public's constitutional rights, and enjoining it in the public interest.

18   ## VIII.  QUALIFIED IMMUNITY DOES NOT APPLY

19    Plaintiffs are not seeking damages, therefore, Sheriff Hutchens cannot claim

20   qualified immunity under the authority she cites. *See* Defs.' Opp'n 22:25-28 (citing

21   *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009)).

22   ## CONCLUSION

23    Sheriff Hutchens hardly responds to Plaintiffs' moving papers directly at all.

24   She misconstrues Plaintiffs' constitutional claims to be what she wants them to be,

25   disregards the authority Plaintiffs cite, and simply ignores that she has the burden

26   to justify the challenged policy; a burden she did not, and really cannot, meet.

27   Instead, the Sheriff largely just recites political dogma to argue in essence that the

28   newly recognized fundamental right to bear arms is too dangerous a right, and she

---

PLAINTIFFS' REPLY TO OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

invites this Court to disregard the *Heller's* admonition and hold that the rights protected by the Second Amendment are not "really worth insisting upon." *Heller*, 554 U.S. at 634-35. The Court should decline her invitation.

Dated: October 16, 2012            **MICHEL & ASSOCIATES, PC**


                                    /s/ C. D. Michel
                                   C. D. MICHEL
                                   Attorney for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| DOROTHY McKAY, DIANA KILGORE, PHILLIP WILLMS, FRED KOGEN, DAVID WEISS, and THE CRPA FOUNDATION,<br><br>                    Plaintiffs,<br><br>        v.<br><br>SHERIFF SANDRA HUTCHENS, individually and in her official capacity as Sheriff of Orange County, California, ORANGE COUNTY SHERIFF-CORONER DEPARTMENT, COUNTY OF ORANGE, CALIFORNIA, and DOES 1-10,<br><br>                    Defendants. | **CASE NO.: SACV 12-1458JVS (JPRx)**<br><br><br>**CERTIFICATE OF SERVICE** |

IT IS HEREBY CERTIFIED THAT:

I, the undersigned, am a citizen of the United States and am at least eighteen years of age. My business address is 180 E. Ocean Blvd., Suite 200, Long Beach, California, 90802.

I am not a party to the above-entitled action. I have caused service of

**PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**

on the following party by electronically filing the foregoing with the Clerk of the U. S. D.C. using its CM/ECF System, which electronically notifies them.

Nicholas S.  Chrisom, County Counsel
Nichole M.  Walsh, Deputy
nicole.walsh@coco.ocgov.com
Elizabeth A.  Pejeau, Deputy
liz.pejeau@coco.ocgov.com
333 West Santa Ana Blvd., Suite 407
Post Office Box 1379
Santa Ana, CA 92702-1379

I declare under penalty of perjury that the foregoing is true and correct. Executed on October 16, 2012.

/s/ C. D. Michel
C. D. Michel
Attorneys for Plaintiffs